# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| RTI HOLDING COMPANY, LLC,[1] | ) | Case No. 20-12456 (JTD) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | |
| | ) | |
| RUBY TUESDAY, INC., | ) | Adv. Case No. _____ |
| | ) | |
| Plaintiff. | ) | |
| | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| MOODY NATIONAL RUBY T, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT FOR DECLARATORY RELIEF

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's U.S. tax identification number are as follows: RTI Holding Company, LLC (4966); Ruby Tuesday, Inc. (5239); Ruby Tuesday, LLC (6505); RTBD, LLC (6505); RT of Carroll County, LLC (8836); RT Denver Franchise, L.P. (2621); RT Detroit Franchise, LLC (8738); RT Distributing, LLC (6096); RT Finance, LLC (7242); RT FL Gift Cards, Inc. (2189); RT Florida Equity, LLC (7159); RT Franchise Acquisition, LLC (1438); RT of Fruitland, Inc. (1103); RT Indianapolis Franchise, LLC (6016); RT Jonesboro Club (2726); RT KCMO Franchise, LLC (7020); RT Kentucky Restaurant Holdings, LLC (7435); RT Las Vegas Franchise, LLC (4969); RT Long Island Franchise, LLC (4072); RT of Maryland, LLC (7395); RT Michiana Franchise, LLC (8739); RT Michigan Franchise, LLC (8760); RT Minneapolis Franchise, LLC (2746); RT Minneapolis Holdings, LLC (7189); RT New England Franchise, LLC (4970); RT New Hampshire Restaurant Holdings, LLC (7438);  RT New York Franchise, LLC (1154); RT Omaha Franchise, LLC (7442); RT Omaha Holdings, LLC (8647); RT One Percent Holdings, LLC (6689); RT One Percent Holdings II, LLC (2817); RT Orlando Franchise, LP (5105); RT Restaurant Services, LLC (7283); RT South Florida Franchise, LP (3535); RT Southwest Franchise, LLC (9715); RT St. Louis Franchise, LLC (6010); RT Tampa Franchise, LP (5290); RT Western Missouri Franchise, LLC (6082); RT West Palm Beach Franchise, LP (0359); RTTA, LP (0035); RTT Texas, Inc. (2461); RTTT, LLC (9194); Ruby Tuesday of Allegany County, Inc. (8011); Ruby Tuesday of Bryant, Inc. (6703); Ruby Tuesday of Columbia, Inc. (4091); Ruby Tuesday of Frederick, Inc. (4249); Ruby Tuesday of Linthicum, Inc. (8716); Ruby Tuesday of Marley Station, Inc. (1641); Ruby Tuesday of Pocomoke City, Inc. (0472); Ruby Tuesday of Russellville, Inc. (1601); and  Ruby Tuesday of Salisbury, Inc. (5432). The Debtors' mailing address is 333 East Broadway Ave., Maryville, TN 37804.

Plaintiff, Ruby Tuesday, Inc. (the "Debtor"), one of the debtors and debtors in possession (the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), as and for its *Complaint for Declaratory Relief* against Moody National Ruby T, LLC (the "Defendant"), by and through its undersigned counsel of record, alleges as follows:

## SUMMARY OF ACTION

1.      The Debtor is the lessee of commercial real property located in Plymouth Meeting, Pennsylvania, that operates as a Ruby Tuesday® restaurant (defined herein as the "**Restaurant**").  By the Complaint, the Debtor seeks an abatement of its rental payments under its lease with the Defendant (defined herein as the "**Lease**"), based on the global COVID-19 pandemic and the imposition of governmental regulations, recommendations, or orders related to the COVID-19 pandemic (the "**Government Regulations**") that have had a devastating impact on the Debtor's ability to operate the Restaurant, until such Government Regulations have been lifted and to reflect the extent and duration of such forced governmental closures and limitations on the Debtor's operations.  Such relief is necessary to protect the Debtor's rights under its Lease with the Defendant and to ensure the Debtors' ability to successfully reorganize in these Chapter 11 Cases.

2.      The Chapter 11 Cases were commenced during the unprecedented global pandemic caused by the outbreak of the novel coronavirus disease (COVID-19) that has infected millions of people around the world, killed nearly 300,000 people in the United States as of the date of filing of this Complaint, and disrupted daily social and economic life.  Beginning in the early spring of 2020, restaurants throughout the world were negatively affected by the COVID-19 pandemic, many to the point of permanent closure.  The lack of predictability in the spread of the virus coupled with the necessary responses of governments to try and limit exposure by

preventing gatherings has eviscerated the restaurant industry, including the Ruby Tuesday®

restaurant chain, whose business model largely depends on providing social environments for

people to meet and enjoy dining out.  Government actions such as mandated restaurant closures,

mandated mall closures, shelter in place orders, carry-out only orders, reduced hour orders, and

social distancing/self-quarantining orders and guidance created a situation whereby the Debtors'

revenues dropped so substantially that they could no longer sustain their normal operating costs.

Rental obligations, as a fixed expense, were particularly difficult to manage since they were not

reduced in line with revenue deterioration.

3.     On March 17, 2020, the COVID-19 pandemic and attendant Government

Regulations forced the Debtor to close the Restaurant.  By June 2, 2020, the COVID-19

pandemic continued and, in accordance with the Government Regulations, the Restaurant was

only permitted to serve customers on a delivery or carry-out basis.  As of the commencement of

the Chapter 11 Cases, the Restaurant was allowed to offer dining room services, but only under

strict capacity and other restrictions mandated by the Government Regulations, which continue

to affect the Debtor's ability to sustain its operations.

4.     The Debtor's obligation to pay rent under the Lease should be abated for the

following reasons: (a) the COVID-19 pandemic and related Government Regulations triggered

the force majeure provisions of the Lease that expressly relieve the Debtor of its rent obligations;

(b) by significantly limiting the Debtor's business operations, the COVID-19 pandemic and

related Government Regulations frustrated the fundamental purpose of the Lease; and (c) by

significantly limiting the Debtor's business operations, the COVID-19 pandemic and related

Government Regulations rendered the Debtor's performance under the Lease impossible and/or

impracticable.

5.      Based on the foregoing, the Debtor brings this action for a declaratory judgment for abatement of the Debtor's rent payments for the Restaurant from the date that the Government Regulations went into effect until such time as they are lifted, in an amount to be proven at trial.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (B) and (O). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

## THE PARTIES

7.      Plaintiff, Ruby Tuesday, Inc., is a corporation organized and existing under the laws of the State of Georgia, and is one of the Debtors in the Chapter 11 Cases.

8.      Defendant, Moody National Ruby T, LLC, is a limited liability company organized and existing under the laws of the State of Delaware.

## STATEMENT OF FACTS

**A.      General Background**

9.      The Debtors develop, operate, and franchise casual dining restaurants under the Ruby Tuesday® brand.  On October 7, 2020 (the "Petition Date"), the Debtors commenced these Chapter 11 Cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The Debtors have continued in the possession of their property and have continued to operate and manage their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On October 26, 2020, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors in these Chapter 11 Cases.  No trustee or examiner has been appointed in the Chapter 11 Cases.

10.     On October 16, 2020, the Debtors filed their *Motion for Entry of an Order Pursuant to Sections 105(a) and 503(b) of the Bankruptcy Code Abating Rents Under Unexpired Leases of Nonresidential Real Property for Restaurants Affected by Government Regulations* [Dkt. No. 145] (the "**Abatement Motion**").

11.     On December 9, 2020, the Court established procedures relating to the determination of the rent abatement issues in the Chapter 11 Cases by way of a *Scheduling Order Re: Abatement Litigation* (the "**Abatement Procedures**") [Dkt. No. 689].  The Abatement Procedures provide, among other things, that, on or before December 14, 2020, the Debtors shall file complaints to commence the "first round" of adversary proceedings against certain landlord defendants seeking the abatement of rent obligations of one or more of the Debtors, as generally described in the Abatement Motion.  Under the terms of the Abatement Procedures, the Abatement Motion was deemed withdrawn.

12.     This Complaint is brought in accordance with the Abatement Procedures.

**B.      The Lease**

13.     On or about June 24, 1998, the Debtor, as lessee, and McBlynn Lodging PM, Inc., predecessor in interest to Defendant, as lessor, entered into a lease (as amended, supplemented or modified, the "**Lease**") of premises located at 2053 Chemical Road, Plymouth Meeting, Pennsylvania 19462 (the "**Premises**").   The Premises, consisting of 4,959 square feet, are operated by the Debtor as a Ruby Tuesday® restaurant (the "**Restaurant**").

14.     Section 33 of the Lease provides a force majeure provision (the "**Force Majeure Provision**"), as follows:

33. **FORCE MAJEURE**:

Lessor and/or Ruby Tuesday shall be excused for the period of any delay and shall not be deemed in default with respect to the performance of any of the terms, covenants, and conditions of this Lease when prevented from so doing by cause or causes beyond the Lessor's and/or Ruby Tuesday's control, which shall include, without limitation, all labor disputes, governmental regulations or controls, fire or other casualty, inability to obtain any material, services, acts of God, or any other cause, whether similar or dissimilar to the foregoing, not within the control of the Lessor and/or Ruby Tuesday.

15.    The principal purpose of the Lease was to allow the Debtor to operate the Restaurant as it operated prior to the COVID-19 pandemic and imposition of the Government Regulations.

C.    **The Government Regulations**

16.    The Premises and the Restaurant are subject to the orders of the Commonwealth of Pennsylvania, the County of Montgomery, and Plymouth Township. Government Regulations have been issued as a result of the COVID-19 crisis that impair economic activity and directly affect the operation of the Restaurant. The Government Regulations that have been, and that are currently, in effect affecting the Restaurant are as follows:

    a.    On March 6, 2020, the Commonwealth of Pennsylvania, through the Office of the Governor, issued a Proclamation of Disaster Emergency.[2] This State Order limited the Debtor's ability to operate the Restaurant, because it "suspend[ed] the provision of any regulatory statute prescribing the procedures for conduct in the Commonwealth business, or the orders, rules or

---

[2] *See* https://www.scribd.com/document/450457202/2020-3-6-COVID19-Digital-Proclamation-pdf, last accessed December 13, 2020.

regulations of any Commonwealth agency, if strict compliance with the provisions of any statute, order, rule or regulation would in any way prevent, hinder, or delay necessary action in coping with this emergency." *Id.*

b.  On March 19, 2020, the Commonwealth of Pennsylvania Department of Health issued a Business Closure Order.[3]  This Order limited the Debtor's ability to operate the Restaurant because it prohibited any person or entity from operating a place of business that was not life sustaining, specifically stating that, "All restaurants and bars are ordered to close their dine-in facilities," effective immediately and until further notice.  *Id.*

c.  On the same day – March 19, 2020 – the Office of Governor Wolf issued a Business Closure Order.[4]  Similarly to the Commonwealth's Order noted above, this Order limited the Debtor's ability to operate the Restaurant, as it prohibited any person or entity from operating a place of business that was not life sustaining, specifically stating that, "All restaurants and bars previously have been ordered to close their dine-in facilities," effective immediately and until further notice.  *Id.*

d.  On March 23, 2020, the Commonwealth of Pennsylvania Department of Health issued a Stay Home Order, which targeted, *inter alia*, Montgomery County.[5]  This Order further limited the Debtor's ability to operate the Restaurant, as it required all residents of Montgomery County, Pennsylvania

---

[3] *See* https://www.scribd.com/document/452409377/03-19-20-Soh-Covid-Order, last accessed December 13, 2020.

[4] *See* https://www.scribd.com/document/452416027/20200319-TWW-COVID-19-Business-Closure-Order, last accessed December 13, 2020.

[5] *See* https://www.governor.pa.gov/wp-content/uploads/2020/03/03.23.20-SOH-Stay-at-Home-Order.pdf, last accessed December 13, 2020.

(and the other counties in the Commonwealth to which it was directed) to "stay at home except as needed to access, support or provide life-sustaining business, emergency or government services." *Id.*

e.   On the same day – March 23, 2020 – the Office of Governor Wolf also issued a Stay Home Order, which targeted, *inter alia*, Montgomery County.[6]  This Order also continued to limit the Debtor's ability to operate the Restaurant, because it required that all residents of Montgomery County, Pennsylvania (and the other counties to which this Order was directed) to "stay home except as needed to access, support or provide life-sustaining business, emergency or government services." *Id.*

f.   Then, on April 1, 2020, the Commonwealth of Pennsylvania Department of Health issued a state-wide Stay at Home Order.[7]  This order limited the Debtor's ability to operate the Restaurant, because it ordered all residents of the Commonwealth to remain at home, "except as needed to access, support or provide life-sustaining business, emergency, or government services." *Id.*

g.   Similarly, on the same day – April 1, 2020 – the Office of Governor Wolf issued its own Stay at Home Order.[8]  Similarly to the Commonwealth Department of Health's order, this Order limited the Debtor's ability to operate the Restaurant, as it required all residents of the Commonwealth of

---

[6] *See* https://www.governor.pa.gov/wp-content/uploads/2020/03/03.23.20-TWW-COVID-19-Stay-at-Home-Order.pdf, last accessed December 13, 2020.

[7] *See* https://www.scribd.com/document/454418390/04-01-20-SOH-Statewide-Stay-at-Home-Order, last accessed December 13, 2020.

[8] *See* https://www.governor.pa.gov/wp-content/uploads/2020/04/20200401-GOV-Statewide-Stay-at-Home-Order.pdf, last accessed December 13, 2020.

Pennsylvania to remain at home, "except as needed to access, support, or provide life-sustaining business, emergency, or government services." *Id.*

h. The Commonwealth of Pennsylvania Department of Health issued its next order on April 20, 2020, this time in the form of an Amended Business Closure Order.[9] This Amended Order continued to restrict and limit the Debtor's ability to do business at the Premises, as it did not include restaurants among the certain businesses it permitted to operate limited in-person activities.

i. Likewise, on the same day – April 20, 2020 – the Office of Governor Wolf issued its Amended Stay at Home Order.[10] This Amended Order continued to restrict the Debtor's ability to operate the Restaurant, as it continued to require residents of the Commonwealth to remain at home through May 8, 2020.

j. On May 7, 2020, the Commonwealth of Pennsylvania Department of Health issued a new order – an Order for Limited Opening of Businesses and Lifting Stay at Home Requirements.[11] This Order failed to lift the prohibition on dine-in facilities throughout the Commonwealth, and thus continued to limit and restrict the Debtor's ability to operate the Restaurant.

---

[9] *See* https://www.scribd.com/document/457361388/04-20-20-SOH-Business-Closure-Order-Amendment, last accessed December 13, 2020.

[10] *See* https://www.governor.pa.gov/wp-content/uploads/2020/04/20200420-GOV-Stay-at-Home-Order-Amendment.pdf, last accessed December 13, 2020.

[11] *See* https://www.scribd.com/document/460381371/05-07-20-SOH-Yellow-Phase-Order, last accessed December 13, 2020.

k.   On the same day – May 7, 2020 – the Office of Governor Wolf issued its

Amendment to the Stay at Home Order.[12]  This Amendment extended the

Governor's prior order, and required individuals to stay at home through June

4, 2020, and thus, continued to restrict and impact the Debtor's ability to

operate the Restaurant.

l.   The Office of Governor Wolf issued a second order that same day – May 7,

2020 – this one an Order Lifting the Stay at Home Order and for the Limited

Opening of Businesses.[13]  Like the similarly-named order from the

Commonwealth Department of Health, this Order failed to lift the prohibition

on dine-in facilities throughout the Commonwealth, and thus continued to

restrict the Debtor's ability to operate the Restaurant.

m.   On May 27, 2020, the Commonwealth of Pennsylvania Department of Health

issued its Order for the Continued Reopening of the Commonwealth.[14]  This

Order, while allowing for reopening of in-person restaurant operations, was

limited in scope, and did not authorize the reopening of all counties in the

Commonwealth.  In fact, it did not apply to Montgomery County, where the

Debtor's Restaurant is located.  As such, the Debtor's operations at the

Premises continued to be restricted and impacted by the Commonwealth's

orders.

---

[12] *See* https://www.governor.pa.gov/wp-content/uploads/2020/05/20200507-TWW-Stay-at-Home-Order-Amendment.pdf, last accessed December 13, 2020.

[13] *See* https://www.scribd.com/document/460381373/05-07-20-TWW-Yellow-Phase-Order, last accessed December 13, 2020.

[14] *See* https://www.governor.pa.gov/wp-content/uploads/2020/05/20200527-SOH-Green-Phase-Order.pdf, last accessed December 13, 2020.

n.  On the same day – May 27, 2020 – the Office of Governor Wolf issued an Order for the Continued Reopening of the Commonwealth.[15]  Similar to the order noted above, this Order allowed for the reopening of in-person restaurant operations, but was limited in scope, and did not apply to Montgomery County.  As the Debtor's Restaurant is located in Montgomery County, its operations of this restaurant continued to be restricted.

o.  On June 3, 2020, the Office of Governor Wolf issued an Amended Disaster Emergency Proclamation.[16]  This Order extended the original declaration of emergency in the Commonwealth of Pennsylvania, from March 6, 2020, for a period of an additional ninety (90) days.  This Amended Proclamation continued in negatively impact the Debtor's ability to operate its restaurant at the Premises.

p.  On July 15, 2020, the Commonwealth of Pennsylvania Department of Health issued an Order Directing Mitigation Measures.[17]  This Order continued to limit the Debtor's ability to operate its restaurant at the Premises, as it limited indoor dining to twenty-five percent (25%) of the maximum occupancy permitted under the fire code.

---

[15] *See* https://www.governor.pa.gov/wp-content/uploads/2020/05/20200527-TWW-green-phase-order.pdf, last accessed December 13, 2020.

[16] *See* https://www.governor.pa.gov/wp-content/uploads/2020/06/20200603-TWW-amendment-to-COVID-disaster-emergency-proclamation.pdf, last accessed December 13, 2020.

[17] *See* https://www.governor.pa.gov/wp-content/uploads/2020/07/20200715-SOH-targeted-mitigation-order.pdf, last accessed December 13, 2020.

q.  On the same day – July 15, 2020 – the Office of Governor Wolf issued an Order Directing Targeted Mitigation Measures.[18]  Like the Commonwealth Department of Health's Order, this Order limited indoor dining to twenty-five percent (25%) of the maximum occupancy permitted under the fire code, and thus continued to restrict and impact the Debtor's ability to operate its business at the Premises.

r.  Additionally, even though the Debtor was permitted to resume limited indoor dining service, its operations at the Premises were restricted by the extensive controls and procedures outlined in the Office of the Governor's Guidance on Dining and Professional Sports[19] and Guidance for Businesses in the Restaurant Industry Permitted to Operate.[20]  Both Guidance orders were entered on May 27, 2020.

s.  Both Guidance orders outline specific restrictions, including physical distancing requirements for bar patrons, table-spacing, face mask/covering guidelines, occupancy limits, procedures for sanitization, and implementation of a COVID-19 prevention plan, in addition to other guidelines and requirements in order to ensure that both employees of the establishment and its customers remain safe.

---

[18] *See* https://www.governor.pa.gov/wp-content/uploads/2020/07/20200715-TWW-targeted-mitigation-order.pdf, last accessed December 13, 2020.

[19] *See* https://www.governor.pa.gov/newsroom/gov-wolf-issues-updated-green-phase-order-guidance-on-dining-and-professional-sports/, last accessed December 13, 2020.

[20] *See* https://www.governor.pa.gov/covid-19/restaurant-industry-guidance/, last accessed December 13, 2020.

t.  On September 17, 2020, the Secretary of the Department of Health issued an Amendment to the Order Directing Mitigation Measures.[21]  This Amendment continued to restrict and limit the Debtor's ability to operate the Restaurant, as it limited indoor dining to fifty percent (50%) of the maximum occupancy permitted under the fire code, but only once the establishment enrolls in and complies with the Open & Certified Pennsylvania program administered by the Department of Community and Economic Development. This Amendment further limited the Debtor's operations in that alcohol sales were ordered to cease at 11:00 p.m.

u.  On the same day – September 17, 2020 – the Office of Governor Wolf issued an Amendment to the Order Directing Targeted Mitigation Measures.[22]  This Amendment mirrored the Department of Health's Amendment, in that it continued to restrict operations of restaurants, by requiring sales of alcohol to cease at 11:00 p.m., and allowing restaurants to increase their indoor dining capacity to fifty percent (50%) of the maximum occupancy permitted under the fire code, but only after the establishment enrolls in and complies with the Open & Certified Pennsylvania program, as administered by the Department of Community and Economic Development.  These restrictions continued to negatively impact the Debtor's ability to operate its business at the Premises.

v.  On November 23, 2020, the Secretary of the Department of Health issued and Order for Mitigation and Enforcement, that set out many updated restrictions

---

[21] *See* https://www.governor.pa.gov/wp-content/uploads/2020/09/20200917-SOH-amendment-to-targeted-mitigation-order.pdf, last accessed December 13, 2020.

[22] *See* https://www.governor.pa.gov/wp-content/uploads/2020/09/20200917-TWW-amendment-to-targeted-mitigation-order.pdf, last accessed December 13, 2020.

on operations of businesses in the Commonwealth of Pennsylvania, including restaurants.[23]  This new Order further impacted and restricted the Debtor's ability to operate the Restaurant, as it reduced allowable capacity for indoor dining to twenty-five percent (25%) of the maximum occupancy permitted under the fire code.  This Order also implemented stringent contact-tracing requirements, staggered employee schedules, plexiglass shields at restaurants, and more.  It is important to also note that the 25% maximum capacity also includes staff of the establishment.

w.  On the same day – November 23, 2020 – the Office of Governor Wolf issued its own Order for Mitigation, Enforcement, and Immunity Protections, which set forth new and fulsome restrictions and limitations similar to those imposed by the Secretary of the Department of Health's order.[24]  The Debtor's ability to operate its restaurant at the Premises continued to be limited and restricted, as this Order now limited indoor dining to no more than twenty-five percent (25%) of the maximum occupancy permitted under the fire code (including staff).  This new Order also implemented stringent contact-tracing requirements, staggered employee schedules, plexiglass shields at registers, and more.

---

[23] *See* https://www.health.pa.gov/topics/Documents/Diseases%20and%20Conditions/Order%20of%20the%20Secretary%20for%20Mitigation%20and%20Enforcement.pdf, last accessed December 13, 2020.

[24] *See* https://www.governor.pa.gov/wp-content/uploads/2020/11/20201123-TWW-mitigation-enforcement-immunity-order.pdf, last accessed December 13, 2020.

x.   On December 10, 2020, the Secretary of the Department of Health issued a
     new order – an Order Directing Limited-Time Targeted Mitigation.[25]  This
     new order prohibited all in-person dining and alcohol sales, and thus has
     negatively impacted and restricted the Debtor's ability to conduct its
     restaurant business at the Premises.  This Order took effect on December 12,
     2021, and remains in effect until January 4, 2021, at least.

y.   On the same day – December 10, 2020 – the Office of Governor Wolf issued
     its own new order, following the Department of Health's new order.  This
     order – an Order Directing Limited-Time Mitigation – sets forth the same
     restrictions as the Department of Health's December 10, 2020 order –
     outlining a full prohibition on all in-person dining and alcohol sales, starting
     December 12, 2020, and continuing through January 4, 2021.[26]  It goes
     without saying that just as with the Department of Health's Order, the
     Governor's December 10, 2020 Order has significantly restricted and
     negatively impacted the Debtor's ability to conduct its restaurant business
     operations at the Premises.

z.   While the County of Montgomery and Plymouth Township have not issued
     their own orders related to the operation of businesses within their
     jurisdictions, they abide by the multitude of orders entered by the
     Commonwealth of Pennsylvania Department of Health and the Office of

---

[25] *See* https://www.governor.pa.gov/wp-content/uploads/2020/12/20201210-SOH-Limited-Time-Mitigation-Order.pdf, last accessed December 13, 2020.

[26] *See* https://www.governor.pa.gov/wp-content/uploads/2020/12/20201210-TWW-Limited-Time-Mitigation-Order.pdf, last accessed December 13, 2020.

Governor Wolf, which continue to restrict and limit the operations of the

Debtor at the Restaurant.

aa. It bears repeating that as of the filing of this Complaint, the Commonwealth of

Pennsylvania continues to limit the Debtor's ability to operate its Restaurant,

located in Plymouth Meeting.

17.     As outlined above, starting in mid-March 2020, the Government Regulations

mandated the full closure of the Restaurant's dining room to all patrons.  The Restaurant was

only permitted to provide food and non-alcoholic beverages via delivery or take-out.  The

Restaurant's revenues were significantly impacted by the Governmental Regulations, as the

Debtor's business model is nearly fully based on in-house dining, with the historical run rate on

delivery and take-out for the Restaurant accounting for less than 10% of total revenue.  The shut-

down of the dining room to guests necessitated the closure of the Restaurant during this period.

The dining room closure of the Restaurant was devastating to the Debtor's business, with an

initial revenue loss exceeding 84.5%.

18.     As outlined above, the Government Regulations have since been altered for a

period of time to allow for a reopening of the Restaurant's dining room, however, in a

significantly limited fashion.  To address the changes wrought by the Government Regulations

and to comply with such Government Regulations, the Debtor streamlined its menu with an eye

towards reducing inventory, operational complexity and labor.  However, no bar service at the

Restaurant was allowed.  In addition, the Garden Bar, which is Ruby Tuesday's signature feature

and brand differentiator, could not be offered due to the Government Regulations' prohibition on

self-service dining.  As of the filing of this Complaint, no indoor dining is permitted in

Pennsylvania.  The Restaurant is still not permitted to offer a self-service Garden Bar and the operations of the Restaurant remain limited and subject to the Government Regulations.

19.     The Government Regulations had, and continue to have, a dramatic negative impact on the Debtor's ability to operate the Restaurant as it had prior to the onset of the COVID-19 pandemic and imposition of the Government Regulations.

20.     The COVID-19 pandemic and Government Regulations imposed on the Restaurant's operations were unforeseeable as of the parties' entry into the Lease and were beyond the Debtor's fault, making or control.

21.     The Debtor asserts that the COVID-19 pandemic and Government Regulations provide for the Debtor's right to abate rent under the Lease.

22.     Upon information and belief, the Defendant disputes the Debtor's right to abate rent under the Lease.

## FIRST CLAIM FOR RELIEF

### (Declaratory Judgment That the Force Majeure Provision Requires That the Rents Be Abated)

23.     The Debtor repeats and realleges the allegations above as if fully set forth herein.

24.     The Lease contains the Force Majeure Provision.

25.     The Force Majeure Provision covers the following circumstances: "cause or causes beyond the Lessor's and/or Ruby Tuesday's control, which shall include, without limitation, all labor disputes, governmental regulations or controls, fire or other casualty, inability to obtain any material, services, acts of God, or any other cause, whether similar or dissimilar to the foregoing, not within the control of the Lessor and/or Ruby Tuesday."

26.     The State of Pennsylvania and other local governmental agencies in Pennsylvania issued the Government Regulations which govern, control and restrict the Restaurant's operations.

27.     The COVID-19 pandemic and Government Regulations were unforeseeable and beyond the Debtor's fault, making or control.

28.     The COVID-19 pandemic and Government Regulations constituted a force majeure event under the Force Majeure Provision of the Lease, excusing the Debtor's nonperformance under the Lease caused by the COVID-19 pandemic and Government Regulations.

29.     As a result, the Debtor is entitled to declaratory judgment for abatement of the Debtor's rent payments for the Restaurant from the date that the Government Regulations went into effect until such time as they are lifted, in an amount to be proven at trial.

<u>SECOND CLAIM FOR RELIEF</u>

**(Declaratory Judgment That the Common Law Doctrine of
Frustration of Purpose Requires That the Rents Be Abated)**

30.     The Debtor repeats and realleges the allegations above as if fully set forth herein.

31.     The common law doctrine of frustration of purpose provides that a party's contractual obligations may be excused when the principal purpose of the contract is substantially frustrated without fault by the occurrence of an event, the non-occurrence of which was a basic assumption on which the contract was made.

32.     The State of Pennsylvania and other local governmental agencies in Pennsylvania issued the Government Regulations which govern, control and restrict the Restaurant's operations.

33.     The COVID-19 pandemic and Government Regulations were unforeseeable and beyond the Debtor's fault, making or control.

34.     The COVID-19 pandemic and Government Regulations frustrated the principal purpose of the Lease, excusing the Debtor's nonperformance caused by the COVID-19 pandemic and Government Regulations.

35.     As a result, the Debtor is entitled to declaratory judgment for abatement of the Debtor's rent payments for the Restaurant from the date that the Government Regulations went into effect until such time as they are lifted, in an amount to be proven at trial.

## THIRD CLAIM FOR RELIEF

### (Declaratory Judgment That the Common Law Doctrine of Impossibility and/or Impracticability of Performance Requires That the Rents Be Abated)

36.     The Debtor repeats and realleges the allegations above as if fully set forth herein.

37.     The common law doctrine of impossibility and/or impracticability of performance provides that a failure to perform contract obligations is excused where, after a contract is made, a party's performance is made impossible or impracticable without that party's fault by the occurrence of an event, the non-occurrence of which was a basic assumption on which the contract was made.

38.     The State of Pennsylvania and other local governmental agencies in Pennsylvania issued the Government Regulations which govern, control and restrict the Restaurant's operations.

39.     The COVID-19 pandemic and Government Regulations were unforeseeable and beyond the Debtor's fault, making or control.

40.     The COVID-19 pandemic and Government Regulations made the Debtor's performance under the Lease impossible and/or impracticable, excusing the Debtor's

nonperformance under the Lease caused by the COVID-19 pandemic and Government Regulations.

41.     As a result, the Debtor is entitled to declaratory judgment for abatement of the Debtor's rent payments for the Restaurant from the date that the Government Regulations went into effect until such time as they are lifted, in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment as follows:

1.     On all Claims for Relief, issuing a declaratory judgment that the Debtor's rent payments for the Restaurant are abated from the date that the Government Regulations went into effect until such time as they are lifted, in an amount to be proven at trial; and

2.     Granting such other and further relief as the Court deems just and proper.

Dated: Wilmington, Delaware
December 14, 2020

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ James E. O'Neill*
Richard M. Pachulski (CA Bar No. 90073)
Malhar S. Pagay (CA Bar No. 189289)
James E. O'Neill (Bar No. 4042)
Victoria A. Newmark (CA Bar No. 183581)
919 Market Street, 17th Floor
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile   (302) 652-4400
Email: rpachulski@pszjlaw.com
        mpagay@pszjlaw.com
        joneill@pszjlaw.com
        vnewmark@pszjlaw.com

*Counsel to the Plaintiff*