## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

IN RE: : Chapter 11
:
RTI HOLDING COMPANY, LLC, :
                Debtor : Case No. 20-12456
:
_____ :
:
RUBY TUESDAY, INC., : (Jointly Administered)
:
                Plaintiff :
: Adversary Case No. 20-51046-JTD
        v. :
:
MOODY NATIONAL RUBY T. LLC, :
                Defendant

## DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM TO COMPLAINT FOR DECLARATORY RELIEF

Defendant, Moody National Ruby T, LLC ("Defendant"), by and through its undersigned counsel, states the following Answer, Affirmative Defenses and Counterclaim to Plaintiff's Complaint for Declaratory Relief ("Complaint).

### SUMMARY OF ACTION

1.    The averments in Paragraph 1 are admitted in part and denied in part.  It is admitted that Debtor is a lessee of commercial real property owned by Moody at 2053 Chemical Road, Plymouth Meeting, Pennsylvania 19462, and operates a Ruby Tuesday® restaurant from said location.  The remaining averments of paragraph 1 are denied and strict proof of the same is hereby demanded.  By way of further response, the averments of Paragraph 1 refer to a written document which speaks for itself and any characterization of the same is hereby denied.

2.    The averments of Paragraph 2 are admitted in part and denied in part.  The averments of Paragraph 2 of the Complaint are admitted only to the extent that this Chapter 11

bankruptcy case was commenced on October 7, 2020.  All remaining averments of paragraph 2 are hereby denied and strict proof of the same is hereby demanded.

3.      The averments of Paragraph 3 are denied.  By way of further response, it is specifically denied that the COVID-19 and attendant Government Regulations forced the Debtor to close the restaurant by March 17, 2020.  To the contrary, the Government Regulations did not require the Restaurant to close, but permitted Debtor to remain open in some capacity during the COVID-19 pandemic and Debtor's restaurant never closed but remained open for take-out and delivery services and also at some point opened for in-restaurant dining.

4.      The averments of Paragraph 4 are conclusions of law to which no response is required.  To the extent that a response is deemed to be required, the averments of Paragraph 4 are denied and proof of the same is demanded.

5.      The averments of Paragraph 5 are conclusions of law to which no response is required.  To the extent that a response is deemed to be required, the averments of Paragraph 5 are denied and proof of the same is demanded.

## JURISDICTION AND VENUE

6.      The averments of Paragraph 6 are conclusions of law to which no response is required.  To the extent that a response is deemed to be required, the averments of Paragraph 6 are denied and proof of the same is demanded.

## THE PARTIES

7.      After reasonable investigation, Moody is without sufficient knowledge to admit or deny the averments of Paragraph 7 and, therefore, the averments are denied as stated and proof of the same is demanded.

8.      The averments of Paragraph 8 are admitted.

## STATEMENT OF FACTS

### A.  General Background

9.      The averments of Paragraph 9 are admitted.

10.      The averments of Paragraph 10 are admitted.

11.      The averments of Paragraph 11 are denied.  By way of further response, the averments of Paragraph 11 refer to a written document which speaks for itself and any characterization of the same is hereby denied.

12.      The averments of Paragraph 12 are conclusions of law to which no response is required.  To the extent that a response is deemed to be required, the averments of Paragraph 12 are denied and proof of the same is demanded.

### B.  The Lease

13.      The averments of Paragraph 13 are admitted in part and denied in part. It is admitted that there a lease between Defendant and Debtor for the premises located 2053 Chemical Road, Plymouth Meeting, PA 19462.  By way of further response, the averments of Paragraph 13 refer to a written document which speaks for itself and any characterization of the same is hereby denied.

14.      The averments of Paragraph 14 are denied as stated.  The averments of Paragraph 14 refer to a written document which speaks for itself.

15.      The averments of paragraph 15 are denied and proof of the same is hereby demanded.

### C.  The Government Regulations

16.      The averments of Paragraph 16 including subparagraphs a through aa are conclusions of law to which no response is required.  To the extent that a response is deemed to

be required, the averments of Paragraph 16 and its subparagraphs are denied and proof of the same is demanded. By way of further response, the averments of Paragraph 17 refer to written documents which speak for themselves and any characterization of the same is hereby denied.

17.     The averments of Paragraph 17 are denied as stated and strict proof of the same is hereby demanded.  By way of further response, Debtor's allegations misstate the effect of the Government Regulations on its ability to provide food and alcoholic beverages both in-store and through take-out.  This averments in Paragraph 17 are misleading Debtor misrepresents the impact of the Government Regulations on its revenues by suggesting that the Government Regulations caused an "initial revenue loss" exceeding 84.5% but does not define what constituted the initial revenue loss thus Debtor's reliance on an initial revenue loss exceeding 84.5% is too speculative to support its claims for relief herein.

18.     The averments of Paragraph 18 are denied and strict proof of the same is hereby demanded. It is admitted that the Restaurant dining room was reopened.  By way of further response, Debtor continues to misrepresent the scope and impact of the Government Regulations on the restaurant industry.  Specifically, Debtor suggests that "no bar service at the restaurant was allowed."  This statement is misleading because, although patrons are not permitted to physically "sit" at a bar, restaurant patrons have been permitted to order alcoholic beverages for consumption at their table (when dine-in service was permissible), as well for take-out and delivery.  By way of further response, Debtor also makes reference to its inability to offer a self-service garden bar, yet fails to identify any specific impact to its revenue as a result of the closure of the garden bar, stating only it is a signature feature, and brand differentiator, of Ruby Tuesday®.

19.     The averments of Paragraph 19 are conclusions of law to which no response is required.  To the extent that a response is deemed to be required, the averments of Paragraph 19 are denied and proof of the same is demanded.

20.     The averments of Paragraph 20 are conclusions of law to which no response is required.  To the extent that a response is deemed to be required, the averments of Paragraph 20 are denied and proof of the same is demanded.

21.     The averments of Paragraph 21 are denied. To the contrary, the Restaurant has remained open for business at all times, Debtor had sufficient year to date EBIDAT to operate and Debtor was not prevented from paying rent under the Lease as Debtor continued to operate the Restaurant and pay other expenses but chose to not pay rent.

22.     The averments of Paragraph 22 are admitted.

## FIRST CLAIM FOR RELIEF

### (Declaratory Judgment That the Force Majeure Provision
### Requires That the Rents Be Abated)

23.     Paragraph 23 is an incorporation clause for which no response is required.  By way of further answer, Defendants incorporate by reference their Answers to Paragraphs 1–22 as if fully stated herein.

24.     The averments of Paragraph 24 denied as stated.  By way of further response, the averments refer to a written document which speaks for itself, and any characterization of the same is hereby denied.

25.     The averments of Paragraph 25 denied as stated.  By way of further response, the averments refer to a written document which speaks for itself, and any characterization of the same is hereby denied.

26.     The averments of Paragraph 26 are conclusions of law to which no response is required.  To the extent that a response is deemed to be required, the averments of Paragraph 26 are denied, and it remains a factual issue to the extent to which the Government Regulations actually forced the complete closure of Debtor's restaurant and/or caused a negative impact to their overall revenue.

27.     The averments of Paragraph 27 are admitted in part and denied in part.  Moody admits that the COVID-19 pandemic and the Government Regulations were unforeseeable and outside of Debtor's control.  However, Moody denies all remaining averments, as the measures taken by Debtor in response to the Government Regulations were of Debtors own choice and many were not required by the Government Regulations.  It will be necessary to determine through discovery what specific steps were taken by Debtor and at what time in order to fully assess the validity of their claims.

28.     The averments of Paragraph 28 are conclusions of law to which no response is required.  To the extent that a response is deemed to be required, it is denied that the COVID-19 pandemic and/or the Government Regulations constitute a force majeure event under the Force Majeure Provision of the Lease.

29.     The averments of Paragraph 29 are conclusions of law to which no response is required.  To the extent that a response is deemed to be required, the averments of Paragraph 29 are denied and strict proof of the same is hereby demanded.

## SECOND CLAIM FOR RELIEF

### (Declaratory Judgment That the Common Law Doctrine of
### Frustration of Purpose Requires That the Rents be Abated)

30.     Paragraph 30 is an incorporation clause for which no response is required.  By way of further answer, Defendants incorporate by reference their Answers to Paragraphs 1–29 as if fully stated herein.

31.     The averments of Paragraph 31 are conclusions of law to which no response is required.  To the extent that a response is deemed to be required, the averments of Paragraph 31 are denied and strict proof of the same is hereby demanded.

32.     The averments of Paragraph 32 are denied and proof of the same is hereby demanded.

33.     The averments of Paragraph 33 are admitted in part and denied in part.  Moody admits that the COVID-19 pandemic and the Government Regulations were unforeseeable and outside of Debtor's control.  However, Moody denies all remaining averments, in that Debtor remained open for business and operated as a restaurant and stayed in possession and had quiet enjoyment of the leased premises. By way of further response, as the measures taken by Debtor in response to the Government Regulations were of Debtors own choice and many were not required by the Government Regulations

34.     The averments of Paragraph 34 are conclusions of law to which no response is required.  To the extent that a response is deemed to be required, the averments of Paragraph 34 are denied and strict proof of the same is hereby demanded.

35.     The averments of Paragraph 35 are conclusions of law to which no response is required.  To the extent that a response is deemed to be required, the averments of Paragraph 35 are denied and strict proof of the same is hereby demanded.

## THIRD CLAIM FOR RELIEF

**(Declaratory Judgment That the Common Law Doctrine of Impossibility and/or Impracticability of Performance Requires That the Rents Be Abated)**

36.     Paragraph 36 is an incorporation clause for which no response is required.  By way of further answer, Defendants incorporate by reference their Answers to Paragraphs 1–35 above as if fully stated herein.

37.     The averments of Paragraph 37 are conclusions of law to which no response is required.  To the extent that a response is deemed to be required, the averments of Paragraph 37 are denied and strict proof of the same is hereby demanded.

38.     The averments of Paragraph 38 are denied and proof of the same is hereby demanded.

39.     The averments of Paragraph 39 are admitted in part and denied in part.  Moody admits that the COVID-19 pandemic and the Government Regulations were unforeseeable and outside of Debtor's control.  However, Moody denies all remaining averments, as the Restaurant never closed, remained open for business and in fact did business at all times from and after implementation of the Government Regulations. By way of further response, the measures taken by Debtor in response to the Government Regulations were of Debtors own choice and many were not required by the Government Regulations.

40.     The averments of Paragraph 40 are conclusions of law to which no response is required.  To the extent that a response is deemed to be required, the averments of Paragraph 40 are denied and strict proof of the same is hereby demanded.

41.     The averments of Paragraph 41 are conclusions of law to which no response is required.  To the extent that a response is deemed to be required, the averments of Paragraph 41 are denied and strict proof of the same is hereby demanded.

## PRAYER FOR RELIEF

42.     Moody denies that Plaintiff is entitled to any relief sought in the "WHEREFORE" clause of the Complaint.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

43.     The Complaint fails to state a claim upon which relief can be granted.

### Second Affirmative Defense

44.     Plaintiff's claims are barred by its material breach of the Lease and unclean hands.

### Third Affirmative Defense

45.     Plaintiff's claims are barred by documentary evidence, including the Lease, which was drafted by Plaintiff and which includes a Force Majeure Clause that is not applicable or not wholly enforceable in this case.

### Fourth Affirmative Defense

46.     Plaintiff's claims are barred by waiver. Plaintiff waived its rights to assert a force majeure or other defenses due to its failure to timely notify Moody of the same and by failing to accept a forbearance terms offered by Moody.  Plaintiff has also waived its rights to assert a force majeure or other defense since its restaurant remained open despite the Government Regulations.  Further Plaintiff has acknowledged and pleaded its intention to assume the Lease and pay past due rent as a cure as required under the Bankruptcy Code.

### Fifth Affirmative Defense

47.     Plaintiff's claims are barred by estoppel. Plaintiff is estopped from asserting a force majeure defense as it has been open and operating and benefiting from the quiet enjoyment

of the Leased Premises while also failing to accept forbearance terms offered by Moody. Further Plaintiff has acknowledged and pleaded its intention to assume the Lease and pay past due rent as a cure as required under the Bankruptcy Code.

### Sixth Affirmative Defense

48.     Plaintiff failed to mitigate any damages it may have suffered.

### Seventh Affirmative Defense

49.     Moody is entitled to recoup or set off any abated Lease obligation by the amounts owed by Plaintiff to Moody based upon the Counterclaims set forth below.

### Eighth Affirmative Defense

50.     Plaintiff's claims are barred by illegality.  Plaintiff's efforts to abate and not pay rent that is due are in contravention of the provisions of the United States Bankruptcy Code, 11 U.S.C. § 365 which requires Plaintiff to cure all defaults before assumption or assumption and assignment of an unexpired lease.

### Ninth Affirmative Defense

51.     Plaintiff's claims are barred by laches.

### RESERVATION OF RIGHTS OF OTHER AFFIRMATIVE DEFENSES

52.      Defendants reserve the right to assert any affirmative defense available under the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq.*, or other applicable law, as may be discovered during the course of additional discovery and investigation.

WHEREFORE, Defendant Moody National Ruby T, LLC prays this Honorable Court dismiss Plaintiff's Complaint with prejudice and grant such other and further relief as is just and proper.

## COUNTERCLAIMS

## NATURE OF COUNTERCLAIMS

53.     The statutory bases for the relief requested herein are §§ 362(d)(1), 365(d)(3), 105(a), 503(b) of the Bankruptcy Code and Fed. R. Bankr. P. 6006 and 6007.

54.     The Debtor is the tenant under a Certain Ground Lease Agreement dated effective June 24, 1998 (as amended, the "Lease") with Landlord Moody National Ruby T, LLC, as successor-in-interest to McBlynn Lodging PM, Inc., for the commercial building owned by Landlord at 2053 Chemical Road, Plymouth Meeting, Pennsylvania 19462 (the "Premises"). The Premises are within the Hampton Inn development. A copy of the Lease is attached hereto, and incorporated herein, as Exhibit A.

55.     The Lease constitutes a lease of nonresidential real property in a shopping center as that term is used in § 365(b)(3) of the Bankruptcy Code. *See In re Joshua Slocum, Ltd.*, 922 F.2d 1081, 1086-87 (3rd Cir. 1990).

56.     The Lease was drafted by Plaintiff.

57.     Pursuant to the Lease, Debtor is obligated to, inter alia, pay the following amounts to Landlord:

a.     **Common Area Maintenance Charges in monthly installments**. See Lease, ¶1.B.iv.

b.     **Rent:** Minimum annual rent shall be paid in equal monthly installments of Eighteen Thousand Twenty and 33/100ths Dollars ($18,020.33) and shall be due in advance, on the first day of each and every calendar month during such four (4) year ten (10) month (or such shorter period, as aforesaid) renewal period. Lease, ¶ 4.B.

c.     **Taxes and Governmental Assessments:** See Lease, ¶ 5.B.

d.     **Indemnity:** Ruby Tuesday will indemnify Lessor and save it harmless from and against any and all claims, actions, damages, liability and expense in connection with loss of life, personal injury and/or damage to property arising from or out of the Leased Premises or the use by Ruby Tuesday and its agents, contractors and employees of the common facilities of the Shopping Center, or occasioned wholly or in part by any

negligent act or omission of Ruby Tuesday, its agents 1 contractor or employees. See Lease, ¶ 17.D.

58.   Pursuant to the Lease, the failure of the Debtor to pay any installment of rent or additional rent is a default. See Lease, ¶ 15.

59.   Prior to the Petition Date, Debtor was in default of its obligations under the Lease and was notified of the default on June 4, 2020 (the "Default").

60.   On September 28, 2020, due to Debtor's failure to pay rent charges and late fees totaling $101,663.90 as of September 28, 2020, Landlord notified Debtor that Landlord was exercising its rights under Section 15 of the Lease to terminate the Lease. The effective date was October 9, 2020.

61.   Between the date of the Notice of Termination and the effective date of termination, Debtor filed the Bankruptcy Case.

62.   Debtor has paid neither the past-due rent from March through December 31, 2020, nor common area/parking charges or real estate taxes due under the Lease since March 2020.

63.   As of the Petition Date, Debtor was obligated to landlord under the Lease for the following:

| | |
|---|---|
| Unliquidated Indemnification Obligations under Lease related to Galinski complaint | TBD |
| Unpaid Base Rent due as of the Petition Date | $144,162.72 |
| Property taxes (prorated to 9 months) | $33,714.00 |
| Common area maintenance charges | $9,315.00 |
| TOTAL, **plus** attorney fees, expenses and other unliquidated amounts due under the Lease | $187,191.72 |

64.   The Debtor's restaurant located on the Premises has remained open and operational during the government-ordered operational restrictions including initially for delivery and/or take out, and is currently open for delivery, take out and dining-room dining.

65.    Early in the Case, the Court authorized the Debtors to defer making rent payments through the end of November 2020. The 60-day deferral period ended on December 6, 2020.

66.    Although the deferral period expired, the Debtor has not paid the post-petition rent payments for accrued post-petition rent or common area charges or parking charges as due pursuant to 11 U.S.C. § 365(d)(3).

67.    Through December 31, 2020 the post-petition rental amounts owed by the Debtor to the Landlord was approximately $59,296.97 (the "Post-Petition Rent") plus attorney fees and other costs and charges, and plus rent, taxes and CAM that comes due thereafter.

68.    Debtor has been operating at the Premises at all times and the Restaurant never closed.

69.    Debtor has had the quiet enjoyment of the Premises at all times in 2020.

70.    Debtor has had sufficient funds to pay all of its obligations, including rent under the Lease in 2020.

71.    In addition to amounts due for rent, maintenance charges, and common area/parking charges, Landlord and the Debtor are also the subject of claims by James Galinski and others in relation to an accident that occurred on the Leased Premises prior to the Petition Date during and as a result of the Debtor's use and enjoyment of the Leased Premises, on which claim a suit was filed on or about June 12, 2020 naming the Debtor and Landlord. The Debtor has agreed under the Lease to indemnify, and hold Landlord harmless from such personal injury claims. Lease § 17.D. The Debtor has failed to defend these claims, putting Landlord at risk of exposure to liability, which constitutes a default under the Lease.

72.     Landlord has filed its Motion To Compel Compliance With 11 U.S.C. § 365(D)(3) Including Payment Of Post-Petition Rent, Rejection Of Unexpired Lease, And Other Relief at Doc. 800.

## COUNT I
### Breach of Lease

73.     Landlord incorporates each of the foregoing allegations contained in the foregoing Paragraphs as if set forth fully herein.

74.     The Lease is a valid, enforceable contract.

75.     Landlord fully performed its obligations under the Lease.

76.     Plaintiff breached the lease when it failed to pay the rent, taxes and governmental assessment, and other maintenance charges as such amounts came due under the Lease (the "Default").

77.     Plaintiff failed to cure the Default in the time period provided by the Lease.

78.     Pursuant to 11 U.S.C. § 365(d), Plaintiff must perform all of its obligations that arose under the Lease on or after the Petition Date, including but not limited to postpetition rent, accrued interest, late charges, and attorneys' fees, through and including the date of these Counterclaims.

79.      Because of the Default and Plaintiff's failure to cure the same, Landlord is entitled to damages in the amount of no less than $239,488.69, which represents both the unpaid prepetition and postpetition amounts due and owing to Landlord, plus additional amounts for attorney fees and other amounts that accrue after the date hereof.

80.     If Debtor assumes/assumes and assigns the Lease, the Cure Amount must be the $239,448.69 plus attorney fees and other amounts that accrue hereafter, and plus all fees, costs

and expenses and amounts incurred and/or paid by Landlord in the Galinski Action (as defined below).

81.     If Debtor rejects the Lease, then Moody is entitled to and must be paid an administrative expense claim of $59,296.97 (the "Post-Petition Rent") plus any unpaid rent, CAM, and taxes accruing from and after January 1, 2021, plus attorney fees and other costs and charges, and plus rent, taxes and CAM that comes due thereafter, and plus all fees, costs and expenses and amounts incurred and/or paid by Landlord in the Galinski Action.

82.     If Debtor rejects the Lease, Landlord is also entitled to an allowed unsecured claim of $187,191.72.

**COUNT II**
**Breach of Lease – Termination and Surrender of Premises to Landlord;**
**Payment of Post-Petition Rent and Rejection Damages**

83.     Landlord incorporates each of the foregoing allegations contained in the foregoing Paragraphs as if set forth fully herein.

84.     Plaintiff defaulted under its Lease and remains in default.

85.     Upon default under the Lease, Landlord is entitled to terminate the Lease and obtain possession of the Premises. Lease ¶¶14, 15.

86.     If the performance of the Lease is impossible as claimed by Plaintiff, Plaintiff should reject the Lease and surrender the Premises to Landlord.

87.     Because of Debtor's pre-petition and Debtor's post-petition breach of the Lease, Landlord should be permitted to terminate the Lease. Lease ¶15.

88.     Because the Lease should be rejected and terminated, Debtor is obligated to deliver up and surrender the Premises immediately to Landlord. Lease ¶¶14, 15.

89.     Upon rejection of the Lease, Landlord is entitled to damages for breach and rejection of the Lease as provided for under the Lease and in accordance with the Bankruptcy Code and Landlord should be permitted to file its proof of claim for rejection damages with thirty (30) days after Plaintiff's surrender of the Premises to Landlord.

90.     Pending Plaintiff's surrender of the Premises to Landlord, Plaintiff should be compelled to pay its post-petition rent obligations to Landlord.

## COUNT III
### Indemnity

91.     Landlord incorporates each of the foregoing allegations contained in the foregoing Paragraphs as if set forth fully herein.

92.     Pursuant to the Lease, Ruby Tuesday will indemnify Lessor and save it harmless from and against any and all claims, actions, damages, liability and expense in connection with loss of life, personal injury and/or damage to property arising from or out of the Leased Premises or the use by Ruby Tuesday and its agents, contractors and employees of the common facilities of the Shopping Center, or occasioned wholly or in part by any negligent act or omission of Ruby Tuesday, its agents, contractor or employees. See Lease, ¶ 17.D.

93.     Plaintiff and Moody have been named as Defendants in a lawsuit filed in the Court of Common Pleas of Philadelphia County, Pennsylvania at Case June Term 2020 No. 00814 (the "Galinski Action").

94.     The Galinski Action arises out of Ruby Tuesday's hiring of G&R Mechanical for repairs for which Debtor is responsible at the Leased Premises.  The plaintiff Mr. Galinski ("Galinski") is an employee of G&R Mechanical.

95.     Ruby Tuesday is responsible for the maintenance and repair of the Leased Premises.

96.    Ruby Tuesday was responsible for the design and construction of the Leased Premises.

97.    Any claims or damages alleged in the Galinski Action are the responsibility of Ruby Tuesday Inc.

98.    Ruby Tuesday Inc. has not appeared in and is not defending the Galinski Action.

99.    Moody has appeared and is defending and is incurring costs and expenses relative to its defense.

100.    If the allegations set forth in Galinski's Complaint are proven true at trial, then Ruby Tuesday, Inc. is solely liable to the Galinski Action plaintiffs and obligated to indemnify Moody for any and all costs, expenses and damages awarded therein pursuant to the Lease.

101.    If the allegations set forth in Galinski's Complaint are proven true at trial, then Ruby Tuesday, Inc. is liable over to Moody by way of common law indemnity.

102.    If the allegations set forth in Galinski's Complaint are proven true at trial, then Ruby Tuesday, Inc. is liable over to Moody by way of contractual indemnity.

## PRAYER FOR RELIEF

WHEREFORE, Landlord respectfully requests that the Honorable Court enter an Order in favor of Landlord against Plaintiff on the first counterclaim in an amount to be determined by the Court, allowing Landlord an administrative expense claim, and determining its Cure Claim as alleged above, plus interest, reasonable attorneys' fees; and with respect to its second counterclaim that the Court deem that the Lease is rejected and direct and compel the Plaintiff to surrender the Premises to Landlord and pay all post-petition rent to Landlord accruing through the date of surrender, and with respect to rejection thereof that Landlord be permitted to file its proof of claim for rejection damages with thirty days of surrender of the Premises; and on the

third counterclaim that the Court enter an order compelling Plaintiff to defend and indemnify Landlord in all manners with respect to the Galinski Action, and Moody prays that this Court grant such other and further relief as may be just and proper.

Dated: January 15, 2021  
Wilmington, Delaware

Respectfully submitted,

HILLER LAW, LLC

/s/ *Adam Hiller,*  
Adam Hiller, Esquire (DE No. 4105)  
1500 North French Street  
Wilmington, Delaware 19801  
Phone:  (302) 442-7677  
Email:  ahiller@adamhillerlaw.com

-and-

Beverly Weiss Manne, Esquire  
TUCKER ARENSBERG, P.C.  
1500 One PPG Place  
Pittsburgh, PA 15222  
Phone:  412-594-5525  
Email:  bmanne@tuckerlaw.com

*Counsel for Moody National Companies*