## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| RTI HOLDING COMPANY, LLC,[1] | : | Case Nos. 20-12456-JTD, *et seq.* |
| | : | Jointly Administered |
| Debtor. | : | |
| | : | |
| RUBY TUESDAY, INC., | : | Adv. Pro. No. 20-51046-JTD |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| MOODY NATIONAL RUBY T, LLC, | : | Related to:  Doc. No. 4 |
| | : | |
| Defendant. | : | |
| | : | |

**MOODY NATIONAL RUBY T, LLC'S BRIEF IN SUPPORT OF ITS MOTION
PURSUANT TO FED. R. CIV. P. 56(D) SEEKING DENIAL OR CONTINUANCE OF
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's U.S. tax identification number are as follows: RTI Holding Company, LLC (4966); Ruby Tuesday, Inc. (5239); Ruby Tuesday, LLC (1391); RTBD, LLC (6505); RT of Carroll County, LLC (8836); RT Denver Franchise, L.P. (2621); RT Detroit Franchise, LLC (8738); RT Distributing, LLC (6096); RT Finance, LLC (7242); RT FL Gift Cards, Inc. (2189); RT Florida Equity, LLC (7159); RT Franchise Acquisition, LLC (1438); RT of Fruitland, Inc. (1103); RT Indianapolis Franchise, LLC (6016); RT Jonesboro Club (2726); RT KCMO Franchise, LLC (7020); RT Kentucky Restaurant Holdings, LLC (7435); RT Las Vegas Franchise, LLC (4969); RT Long Island Franchise, LLC (4072); RT of Maryland, LLC (7395); RT Michiana Franchise, LLC (8739); RT Michigan Franchise, LLC (8760); RT Minneapolis Franchise, LLC (2746); RT Minneapolis Holdings, LLC (7189); RT New England Franchise, LLC (4970); RT New Hampshire Restaurant Holdings, LLC (7438); RT New York Franchise, LLC (1154); RT Omaha Franchise, LLC (7442); RT Omaha Holdings, LLC (8647); RT One Percent Holdings, LLC (6689); RT One Percent Holdings II, LLC (2817); RT Orlando Franchise, LP (5105); RT Restaurant Services, LLC (7283); RT South Florida Franchise, LP (3535); RT Southwest Franchise, LLC (9715); RT St. Louis Franchise, LLC (6010); RT Tampa Franchise, LP (5290); RT Western Missouri Franchise, LLC (6082); RT West Palm Beach Franchise, LP (0359); RTTA, LP (0035); RTT Texas, Inc. (2461); RTTT, LLC (9194); Ruby Tuesday of Allegany County, Inc. (8011); Ruby Tuesday of Bryant, Inc. (6703); Ruby Tuesday of Columbia, Inc. (4091); Ruby Tuesday of Frederick, Inc. (4249); Ruby Tuesday of Linthicum, Inc. (8716); Ruby Tuesday of Marley Station, Inc. (1641); Ruby Tuesday of Pocomoke City, Inc. (0472); Ruby Tuesday of Russellville, Inc. (1601); and Ruby Tuesday of Salisbury, Inc. (5432). The Debtors' mailing address is 333 East Broadway Ave., Maryville, TN 37804.

## <u>TABLE OF CONTENTS</u>

NATURE AND STAGE OF PROCEEDINGS ...............................................................................1

SUMMARY OF ARGUMENT .....................................................................................................2

FACTUAL BACKGROUND.........................................................................................................3

ARGUMENT.................................................................................................................................9

    I.    MOODY IS ENTITLED TO RELIEF PURSUANT TO FED. R. CIV. P. 56(D) TO
        HAVE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT DENIED OR TO
        ENGAGE IN DISCOVERY PRIOR TO THE COURT'S CONSIDERATION OF
        PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT. ................................................9

        A.  Legal Standard for Motions Pursuant to Fed. R. Civ. P. 56(d)...............................9

        B.  The Court should deny Debtor's Motion for Summary Judgment or,
            alternatively, Moody should be afforded an opportunity to conduct discovery
            to obtain critical information necessary to defend against the Motion for
            Summary Judgment. .............................................................................................12

        C.  The information sought by Moody through discovery will likely preclude
            summary judgment..............................................................................................15

        D.  Moody did not have an opportunity to obtain discovery prior to the filing
            of the Motion for Summary Judgment..................................................................16

CONCLUSION............................................................................................................................16

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)..................................................................................................11

*Bryson v. Brand Insulations Inc.*,
    621 F.2d 556, 559 (3d Cir. 1980).............................................................................10

*In re Deb Stores Holding LLC*,
    No. 14-12676 (KG), 2018 WL 1577606, at *2 (Bankr. D. Del. Mar. 28, 2018) ....................11

*Doe v. Abington Friends Sch.*,
    480 F.3d 252, 257 (3d Cir. 2007)..............................................................................10

*Hollinger v. Wagner Min. Equip. Co.*,
    667 F.2d 402, 405 (3d Cir. 1981)..............................................................................10

*Integrated Water Res., Inc. v. Shaw Envtl., Inc. (In re IT Grp., Inc.)*,
    377 B.R. 471, 475 (Bankr. D. Del. 2007))................................................................11

*In re Joshua Slocum, Ltd.*,
    922 F.2d 1081, 1086-87 (3rd Cir. 1990)....................................................................4

*Murphy v. Millennium Radio Grp. LLC*,
    650 F.3d 295, 309 (3d Cir. 2011)..............................................................................10

*Shelton v. Bledsoe*,
    775 F.3d 554, 565 (3d Cir. 2015) .......................................................................10, 11

*St. Surin v. Virgin Islands Daily News, Inc.*,
    21 F.3d 1309, 1314 (3d Cir. 1994)............................................................................11

*Superior Offshore Int'l, Inc. v. Bristow Grp.*,
    490 Fed. Appx. 492, 501 (3d Cir. 2012)...................................................................11

*In re Ultimate Acquisition Partners LLP*,
    No. 11-10245 (MFW), 2014 WL 12795558, at *2 (Bankr. D. Del. Jan. 31, 2014).................11

**Statutes and Rules**

11 U.S.C. § 365.....................................................................................................4, 6

Fed. R. Civ. P. 56(d) .............................................................................................1, 10

Fed. R. Civ. P. 26(d) ...................................................................................................................12

Fed. R. Bankr. P. 7056...................................................................................................................1

**Other Authority**

Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2737....................................11

**MOODY NATIONAL RUBY T, LLC'S BRIEF IN SUPPORT OF ITS MOTION
PURSUANT TO FED. R. CIV. P. 56(D) SEEKING DENIAL OR CONTINUANCE OF
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Moody National Ruby T, LLC ("Moody" or "Landlord") files this Brief in support of its

motion pursuant to Fed. Rule 56(d) of the Federal Rules of Civil Procedure (the "Civil Rules")

for the denial or continuance of Plaintiff's Motion for Partial Summary Judgment (the "Summary

Judgment Motion").

In support of its Motion, Moody incorporates the Declaration of Evan Pappas (the

"Pappas Declaration"), which is attached hereto as **Exhibit A**.

**NATURE AND STAGE OF PROCEEDINGS**

1.      Defendant seeks relief under Fed. R. Civ. P. 56(d), which is incorporated into this

adversary proceeding by Fed. R. Bankr. P. 7056.

2.      Plaintiff Ruby Tuesday, Inc. (the "Plaintiff" or "Debtor") is in default of its

obligations under Plaintiff's Lease with Moody (as defined below) by virtue of Plaintiff's failure

to, *inter alia*, pay rent, parking lot charges and real estate taxes since March 2020, and failure to

defend and/or indemnify Moody from a personal injury lawsuit arising out of Plaintiff's conduct

and/or use of the Premises (as defined below).  Despite the fact that Plaintiff has continued to

operate and enjoy quiet enjoyment of the Premises from January 1, 2020 through December 31,

2020, Plaintiff has not paid a penny due under the Lease to Moody since March 2020, through

and including December 31, 2020.  This includes post-petition rent (base rent, taxes and common

area maintenance ("CAM") fees) that the Court had deferred to December 2020.

3.      On December 14, 2020, Plaintiff commenced an adversary proceeding against

Moody, at Adv. Pro. No. 20-51046-JTD, by filing a complaint seeking a declaratory judgment

that the *force majeure* provision contained in paragraph 33 of the Lease (the "Force Majeure Provision") has been triggered and, as such, Plaintiff is entitled as a matter of law to abate its rent obligations to Moody through the remainder of the COVID-19 pandemic (the "Complaint"). [Doc. No. 1.]

4.      Seven days after the Complaint was filed, Plaintiff filed a Motion for Summary Judgment with respect to the abatement claim, allowing no opportunity for the parties to obtain discovery relevant to the Complaint or facts necessary to support the Motion for Summary Judgment.

## SUMMARY OF ARGUMENT

5.      Even though Plaintiff represented in the abatement proceedings before the Court that there were only issues of law implicated in "phase I" of the abatement litigation, a review of the Summary Judgment Motion reveals that to be untrue.  While there is no dispute that there is a Force Majeure Provision in the lease (which Lease incidentally was drafted by and must be construed against Debtor) and that Government Regulations were enacted to help control the COVID-19 pandemic ("Government Regulations"), Debtor has not shown that the Government Regulations have, in fact, caused Debtor to be unable to perform its obligations under the Lease. This issue—*i.e.*, whether and to what extent the Government Regulations actually affected Plaintiff's ability to pay rent—is a material issue of disputed fact.  What is not disputed is that Debtor has remained in possession of the Leased Premises, enjoyed quiet enjoyment of the Leased Premises, and has NEVER BEEN SHUT DOWN by the Government Regulations or otherwise.  To the contrary, Debtor has been open for business and operating throughout the pandemic during and after March 2020—even after the Government Regulations were put into place.

6.      The Motion for Summary Judgment oversimplifies and obfuscates the facts at issue in this case, providing grossly insufficient factual support to show that the COVID-19 pandemic and resulting Government Regulations caused Plaintiff to be unable to comply with its Lease Obligation.

7.      At Debtor's insistence that any legal issues would be raised as part of the abatement proceedings, no discovery was provided as part of the Court's procedures for addressing abatement.  Accordingly, no discovery has occurred—despite the factual issues that were actually presented.  Thus, Debtor moved for summary judgment even though the Complaint was  filed only seven days earlier, the parties have not yet engaged in a Rule 26(f) conference, the Debtor has refused to provide information to Moody on an "informal discovery basis" pertaining to the operations and financial performance of the restaurant at the Leased Premises, and Moody has not even filed its response to the Complaint.  Importantly, this dispute is not as simple as Plaintiff would have the Court believe since the nature, scope, and applicability of the Force Majeure Provision are in dispute and there are material issues of fact relative thereto that preclude summary judgment for Debtor.

8.      Moody requires discovery to verify and/or rebut several factual assumptions made by Plaintiff, to obtain an accurate picture of Plaintiff's financial state, and to prepare a meaningful response to the Motion for Summary Judgment.   Accordingly, the Summary Judgment Motion must be denied, and Moody must be permitted to conduct discovery to more fully analyze whether and to what extent the Government Regulations affected Plaintiff's ability to pay rent to Moody from March 2020 through December 2020.

## FACTUAL BACKGROUND

9.    On October 7, 2020 (the "Petition Date"), the Debtor and certain of its affiliates (collectively with the Debtor, the "Debtors") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code") with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), which cases are jointly administered under Case No. 20-12456 (the "Bankruptcy Case").  The Debtors develop, operate, and franchise casual dining restaurants in the United States, Guam, and five foreign countries under the Ruby Tuesday® brand.  Plaintiff is the tenant under a Certain Ground Lease Agreement effective June 24, 1998 (as amended, the "Lease") with Landlord Moody National Ruby T, LLC, as successor-in-interest to McBlynn Lodging PM, Inc., for the commercial building owned by Landlord at 2053 Chemical Road, Plymouth Meeting, Pennsylvania 19462 (the "Premises").  *The Lease was drafted in its entirety by Ruby Tuesday Inc.*  The Premises are within the Hampton Inn development and adjacent to a Hampton Inn.  Copies of the Lease documents are attached hereto, and incorporated herein, as **Exhibit B**.

10.    The Lease constitutes a lease of nonresidential real property in a shopping center as that term is used in § 365(b)(3) of the Bankruptcy Code. *See In re Joshua Slocum, Ltd.*, 922 F.2d 1081, 1086-87 (3rd Cir. 1990).  Pursuant to the Lease, Plaintiff is obligated, *inter alia,* to pay the following amounts to Landlord:

> **Rent:** Minimum annual rent shall be paid in equal monthly installments of Sixteen Thousand and Eighteen and 08/100ths Dollars ($16,018.08) per month and due in advance.  Lease, ¶ 4.B.
>
> **Common Area Maintenance Charges in Monthly Installments:** *See* Lease, ¶1.B.iv.
>
> **Taxes and Governmental Assessments:** *See* Lease, ¶ 5.B.

11.     Further, the Lease also requires Plaintiff to "indemnify [Moody] against and save it harmless from and against any and all claims, actions, damages, liability and expense in connection with loss of life, personal injury and/or damage to property arising from or out of the Leased Premises . . . ." *See* Lease, ¶ 17.D.  The indemnity provision is relevant here because Plaintiff is currently co-defendant, with Moody, in a state court action pending in the Court of Common Pleas of Philadelphia County (the "Galinski Action").  Debtor is in default of this provision and has not even filed a suggestion of bankruptcy and/or entered an appearance in the Galinski Action.

12.     Pursuant to the Lease, the failure of Plaintiff to pay any installment of rent or additional rent is a default.  *See* Lease, ¶ 15.  Prior to the Petition Date, Plaintiff was in default of its obligations under the Lease and was notified of the default on June 4, 2020 (the "Default").  On September 28, 2020, due to Plaintiff's failure to pay rent charges and late fees totaling $101,663.90 (as of September 28, 2020), Moody notified Plaintiff that Moody was exercising its rights under Section 15 of the Lease to terminate the Lease ("Notice of Termination").  The effective date was October 9, 2020.  Between the date of the Notice of Termination and the effective date of termination, Plaintiff filed the Bankruptcy Case.

13.     Plaintiff has not paid the past-due rent, CAM/parking charges or real estate taxes due under the Lease since March 2020[2].

14.     As of the Petition Date, Plaintiff was obligated to landlord under the Lease for the following:

| | |
|---|---|
| Unliquidated Indemnification Obligations related to the Galinski Action | TBD |
| Unpaid Base Rent due as of the Petition Date | $144,162.72 |

---

[2] Debtor made a payment of the January 2021 base rent on or about January 7, 2021. The January 2021 CAM and Tax charges were not included with the payment.

| Property taxes (prorated to 9 months) | $33,714.00 |
| CAM charges | $9,315.00 |
| TOTAL, **plus** attorney fees, expenses and other unliquidated amounts due under the Lease | $187,191.72 |

15.    Plaintiff's restaurant located on the Premises has remained open and operational during the COVID-19 pandemic and the operational restrictions resulting from the Government Regulations.   Initially, Plaintiff was open and operating for delivery and/or take out, and is currently open and operating for delivery, take out and in-dining-room dining.   Early in the Case, the Court authorized the Debtors to defer making rent payments through the end of November 2020.   The 60-day deferral period ended on December 6, 2020.   Although the deferral period expired, Plaintiff has not paid the post-petition rent payments for accrued post-petition rent, the CAM charges, or the parking charges as required pursuant to 11 U.S.C. § 365(d)(3).   Accordingly, Moody has also filed its Motion to Compel the Debtors to comply with the Bankruptcy Code and pay its post-petition rent in the Debtor's main Bankruptcy Case.

16.    Plaintiff's Complaint seeks to abate rent obligations under the Lease due to the Government Regulations that were put in place due to the COVID-19 pandemic, from the date that the Government Regulations went into effect through the date on which they are ultimately lifted[3].   However, although carefully worded to give an impression to the contrary, Plaintiff's Motion does show that the Restaurant at the Premises has been continuously open for business and operating in some fashion notwithstanding (and without violating) the Government Regulations.   Indeed, the Government Regulations never shut down the restaurant at the Premises, but instead allowed the Restaurant to operate through take-out and delivery of both food and alcoholic beverages (*i.e.*, "to-go" sales). And Debtor already had a take-out and delivery business before the Government Regulations went into effect.   Debtor was operating

---

[3]  It is unclear what the Plaintiff means by this open-ended request.

the restaurant and had sufficient revenues to pay various operating expenses. It was Debtor's discretionary decision to not pay the rent to Moody—a decision which ultimately caused the Default.

17.     Furthermore, because of the COVID-19 pandemic and the Government Regulations, the Debtors obtained a ten million-dollar PPP loan. Debtors' eligible expenses for PPP loan forgiveness include rent. These facts, coupled with an interpretation of the Force Majeure Provision against Debtor, support a finding that the Force Majeure Provision does NOT excuse the Debtor from performing its obligations under the Lease from and after implementation of the Government Regulations.

18.     Moody has limited information regarding Plaintiff's revenue during the relevant time period leading up to the COVID-19 pandemic and the Commonwealth's implementation of the Government Regulations to counter Debtor's non-specific, vague averments in support of its assertion that the Government Regulations "caused" it to be unable to comply with the terms of its Lease. Debtor's own pleadings establish that Debtor's Restaurant was open and operating and, therefore, generating income. As such, the reasonable inference is that Debtor was able to comply with the terms of the Lease. As outlined herein and in the Pappas Declaration, Moody has been deprived of the chance to conduct discovery to determine very critical facts that are essential to evaluating and countering Debtor's Summary Judgment Motion, and an ample opportunity for discovery is necessary to enable Moody's response to the Summary Judgment Motion. It is essential to due process that Moody be afforded the opportunity to take discovery.

19.     The facts averred by the Chief Executive Officer of Ruby Tuesday, Inc. Shawn Lederman, in his Declaration in Support of Debtor's Motion for Partial Summary Judgment (the "Lederman Declaration"), [Doc. 6], are not dispositive and are insufficient for this Court to enter

a summary judgment ruling in Debtor's favor, as it is clear that there are additional disputed material issues of fact remaining at issue and neither the Summary Judgment Motion nor the Lederman Declaration contain enough evidence to compel a ruling that the Government Regulations caused the Debtor to be unable to meet its Lease Obligations:

**Fact 1**: Starting in mid-March 2020, the Government Regulations mandated the closure of the Restaurant's dining room to all patrons. The Restaurant was only permitted to provide food and non-alcoholic beverages via delivery or take-out.  Declaration ¶3.

**Counterpoint**: These averments are an admission that restaurant was open for business and only in-dining in the dining room inside was not permitted.

**Fact 2**: The Restaurant's revenues were significantly impacted by the Governmental Regulations, as the Debtor's business model is nearly fully based on in-house dining, with the historical run rate on delivery and take-out for the Restaurant accounting for less than 10% of total revenue. Declaration ¶3.

**Counterpoint**: This fact states Debtor's historical operation was based upon in-restaurant dining but does not state what Debtors' revenues have been from and after March 2020.  They also show and are an admission that notwithstanding the Government Regulations, the Debtor was operating, had revenues and was not shut down.

**Fact 3**: The dining room closure of the Restaurant was devastating to the Debtor's business, with an initial revenue loss exceeding 75%. Declaration ¶3.

**Counterpoint**: This fact does not provide information other than to state that, initially, the Debtor had a revenue loss.   So what does "initially" mean?  The first day? The first week?  It does not answer the question about if and to what extent the loss continued after March and it does not provide information about whether there was a corresponding decline in expenses.  It also does not say the lack of revenue made it impossible for Debtor to operate.  To the contrary it is an admission that Debtor stayed in business, operated as a restaurant and was never shut down.

**Fact 4**: The Government Regulations have since been altered for a period of time to allow for a reopening of the Restaurant's dining room, however, in a significantly limited fashion. Declaration ¶4.

**Counterpoint**: This is an admission that Debtor has continued to operate its business and in room dining has been permitted.  Plus, the use of the term "significantly" is qualitative at best and probably more in the nature of puffery.

**Fact 5**:  To address the changes wrought by the Government Regulations and to comply with such Government Regulations, the Debtor streamlined its menu with an eye towards reducing inventory, operational complexity and labor. Declaration ¶4.

**Counterpoint**:  This is an admission that the cash flow was within Debtor's control and that Debtor has changed its business model. When these changes were implemented, which was solely within Debtor's control, is not disclosed.

**Fact 5**: However, no bar service at the Restaurant was allowed. Declaration ¶4.

**Counterpoint**: This ignores the fact that, as previously admitted, Debtor was able to offer customers take out drinks as part of an ongoing business operation. It also ignores the fact that for all times when dine-in dining was permitted, drinks could be served to tables within the restaurants. So, a material issue is what percentage of revenue is attributed to "bar service"?  Also, how many more drinks did customers order for take-out from and after March 2020?

**Fact 6**:  In addition, the Garden Bar, which is Ruby Tuesday's signature feature and brand differentiator, could not be offered due to the Government Regulations' prohibition on self-service dining. Declaration ¶4.

**Counterpoint**: This fact does not provide any information to suggest that Debtor could not operate, but reflects that Debtor had to change its business model.  Changes of business model is not a triggering event in the Force Majeure clause in the Lease.

**Fact 7**: As of the filing of this Declaration, no indoor dining is permitted in Pennsylvania. Declaration ¶4.

Counterpoint:  As of January 4, 2021, the 3 weeks of tighter coronavirus restrictions imposed December 12, 2020 expired.  Moreover, the extent to which this limitation triggers the Force Majeure clause in the Lease is ambiguously or not pled.

**Fact 8**:The Restaurant is still not permitted to offer a self-service Garden Bar and the operations of the Restaurant remain limited and subject to the Government Regulations. Declaration ¶4.

**Counterpoint**:  This does not provide any evidence that the Debtor is unable to operate nor the extent to which Debtor has increased its business due to the changed business model.

20.     None of the foregoing facts alone or together, when viewed in a light most favorable to Moody, lead to the conclusion that the Debtor is entitled to invoke the Force Majeure Provision.

# ARGUMENT

## I. MOODY IS ENTITLED TO RELIEF PURSUANT TO FED. R. CIV. P. 56(D) TO HAVE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT DENIED OR TO ENGAGE IN DISCOVERY PRIOR TO THE COURT'S CONSIDERATION OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT.

### A. Legal Standard for Motions Pursuant to Fed. R. Civ. P. 56(d).

21.     The Third Circuit has long recognized "summary judgment is a drastic remedy" and has made clear "that courts are to resolve any doubts as to the existence of genuine issues of fact against the moving parties." *Hollinger v. Wagner Min. Equip. Co.*, 667 F.2d 402, 405 (3d Cir. 1981). Accordingly a "summary judgment procedure under Fed. R. Civ. P. 56 has its own protections against unwarranted pretrial dismissal of an action." *Bryson v. Brand Insulations Inc.*, 621 F.2d 556, 559 (3d Cir. 1980). Rule 56(d) specifically permits the (1) denial of a summary judgment motion; or (2) continuance of a summary judgment motion to permit the opposing party to take discovery before adequately responding to the motion, when the nonmoving party cannot present facts essential to its preparation of an opposition. Fed. R. Civ. P. 56(d). In relevant part, Rule 56(d) states as follows:

> (d) When Facts Are Unavailable to the Nonmovant. If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
> (1) defer considering the motion or deny it;
> (2) allow time to obtain affidavits or declarations or to take discovery; or
> (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).

22.     "It is well established that a court is obliged to give a party opposing summary judgment an adequate opportunity to obtain discovery." *Shelton v. Bledsoe*, 775 F.3d 554, 565 (3d Cir. 2015) (quoting *Doe v. Abington Friends Sch.*, 480 F.3d 252, 257 (3d Cir. 2007))

(internal citations omitted); *see also Murphy v. Millennium Radio Grp. LLC*, 650 F.3d 295, 309

(3d Cir. 2011) (holding that a Civil Rule 56(d) motion is "the proper recourse of a party faced

with a motion for summary judgment who believes that additional discovery is necessary before

he can adequately respond to that motion."). "A Court 'is obligated to give a party opposing

summary judgment an adequate opportunity to obtain discovery.'" *Doe v. Abington Friends

Sch.*, 480 F.3d 252, 257 (3d Cir. 2007) (quoting *Dowling v. City of Philadelphi*a, 855 F.2d 136,

139 (3d Cir. 1988)). "The purpose of Rule 56(d) is to narrow the triable issues to expedite the

trial of a case, and not to address premature or hypothetical questions regarding the molding of a

verdict that may be rendered." *See* Wright, Miller & Kane, Federal Practice and Procedure:

Civil 2d § 2737.

23.     Rule 56(d) motions are generally granted as a matter of course. *See St. Surin v.

Virgin Islands Daily News, Inc.*, 21 F.3d 1309, 1314 (3d Cir. 1994). In fact, the Third Circuit

has held that "[i]f discovery is incomplete, a district court is rarely justified in granting summary

judgment, unless the discovery request pertains to facts that are not material to the moving

party's entitlement to judgment as a matter of law." *Shelton*, 775 F.3d at 568 (citing *Abington

Friends Sch.*, 480 F.3d at 257 (3d Cir. 2007).

24.     A movant bears the burden of establishing that no genuine issue of material fact

exits. *See In re Ultimate Acquisition Partners LLP*, No. 11-10245 (MFW), 2014 WL 12795558,

at *2 (Bankr. D. Del. Jan. 31, 2014) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio

Corp.,* 475 U.S. 574, 585 n.10 (1985); *Integrated Water Res., Inc. v. Shaw Envtl., Inc. (In re IT

Grp., Inc.*), 377 B.R. 471, 475 (Bankr. D. Del. 2007)). A fact is material when it could "affect

the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

25.     When considering a Rule 56(d) motion, the Third Circuit has utilized a three-part test, considering whether the movant (1) stated the particular information sought through discovery; (2) how such information would preclude summary judgment; and (3) why the information was not previously obtained.  *See Superior Offshore Int'l, Inc. v. Bristow Grp.*, 490 Fed. Appx. 492, 501 (3d Cir. 2012).  "This three-part test is meant to offer guidance to the court in exercising its discretion under Rule 56(d) and is not exhaustive."  *In re Deb Stores Holding LLC*, No. 14-12676 (KG), 2018 WL 1577606, at *2 (Bankr. D. Del. Mar. 28, 2018) (citing *Superior Offshore Int'l*, 490 Fed. Appx. at 501).  When applied to the facts of this Bankruptcy Case, this three-part test supports Moody's request for denial or for the continuance of the Summary Judgment Motion at this time.

26.     Furthermore, in viewing the Summary Judgment Motion most positively in Moody's favor, it is clear that material disputed facts exist because Debtor has continued to operate its Restaurant from and after March 2020.

**B.      The Court should deny Debtor's Motion for Summary Judgment or, alternatively, Moody should be afforded an opportunity to conduct discovery to obtain critical information necessary to defend against the Motion for Summary Judgment.**

27.     This adversary proceeding is based upon Plaintiff's request that the Court enter a declaratory judgment that the Force Majeure Provision of the Lease provides for the abatement of Plaintiff's rent payments to Landlord from the date that the Government Regulations went into effect until such time as they are lifted, with the amount of such abatement to be proven at trial.  In support of this claim, Plaintiff avers that "[t]he COVID-19 pandemic and Government Regulations constituted a force majeure event under the Force Majeure Provision of the Lease, excusing the Debtor's nonperformance under the Lease caused by the COVID-19 pandemic and Government Regulations."  Complaint, ¶ 28.

28.     Here, Moody has not been given the opportunity to conduct any discovery whatsoever. *See* Fed. R. Civ. P. 26(d) (indicating that discovery can only commence after the parties have engaged in a Rule 26(f) conference). This is problematic because the averments asserted by Plaintiff in both the Complaint and Motion for Summary Judgment are vague and devoid of information vital to Moody's ability to defend the Motion for Summary Judgment. For instance, Debtor states that "initially" its sales were reduced by 84.5%, but it does not state whether initially was for one day, one week or one month. Complaint at ¶ 17. Debtor states that when the Government Regulations went into effect take-out was only 10% of its business. *Id.* However, that averment is deficient in providing facts to enable the Court to grant summary judgment. Moody, and the Court, is entitled to know all of the facts – not just a few snippets which paint a dire but likely inaccurate picture. Because Debtor admits it put procedures in place to work around the limitations of the Government Regulations (which are the new business normal in the United States) whereby it increased its take-out and delivery sales. Debtor avers that in-room dining has been limited—but the fact is that Debtor has been open. Debtor is and was operating and open for business—including in-room dining. Debtor also has been paying certain expenses of operations. Debtor cannot dispute that the cash generated at the Restaurant exceeded the amount of the rent, but Debtor instead chose to pay other operating debts and obligations. This raises the question: was the cause of Debtor's failure to pay rent to Moody a result of the Debtor's own choice in which expenses it paid and which it did not pay, versus the alleged *force majeure* event on which Debtor relies in its Complaint and Summary Judgment Motion? Moody needs discovery to obtain all of the necessary information to show that Debtor's failure to comply with the Lease was not caused by a *force majeure* event, but was instead caused by the business choices that Debtor made from and after March 2020.

15

29.     Discovery is necessary to determine whether the Government Regulations did, in fact, trigger the Force Majeure Provision and to unveil specific facts relative to the actual impact of the Government Regulations on Plaintiff's ability to operate, including, but not limited to:

- Plaintiff's monthly revenue and cash flow for the three-year time period leading up to the COVID-19 pandemic and implementation of the Government Regulations, through the present date;

- The percentage of Plaintiff's revenue attributable to take-out and/or delivery orders for the three-year time period leading up to the COVID-19 pandemic and implementation of the Government Regulations, through the present date;

- Information regarding the PPP loan obtained by Debtors, including the portion directly received by Plaintiff and how such funds were utilized;

- Information on payments made by Plaintiff for operating expenses other than rental payments to Moody;

- Plaintiff's consideration of options to defer rent payments to Moody, including forbearance, that were presented to Plaintiff by Moody prior to the filing of the Bankruptcy Case;

- An itemization of any cost-reduction measures taken by Plaintiff in response to the Government Regulations and realized decrease in revenue;

- Information concerning factors other than the Government Regulations that may have negatively impacted operations such as bad reviews on the internet;

- Information concerning the amount of revenues and cash on hand from the first 2 months of operations in which Debtor had a significant profit and whether those funds were utilized from and after March to offset lost revenue;

- A comparison of Plaintiff's revenue to the capacity of the hotel adjacent to the Premises; and

16

- An analysis of Debtor's strategies implemented at its other locations where revenues remained steady or re-increased from and after March 2020.

30.     Other than a few inconclusive facts included in the Lederman Declaration, Plaintiff's Summary Judgment Motion fails to set forth enough specific information to show the true extent to which the COVID-19 pandemic and the Government Regulations impacted, and are impacting, Plaintiff's operations from March 2020 to the present.  Moody is entitled to fully discover the financial condition of Plaintiff in the time period leading up to the enactment of the Government Regulations, through the filing of this Bankruptcy Case, and to the present date.

31.     For these reasons, and those outlined below, Moody is entitled to relief pursuant to Civil Rule 56(d).

**C.     The information sought by Moody through discovery will likely preclude summary judgment.**

32.     It is very likely that the information obtained through discovery will preclude summary judgment in favor of Plaintiff and will instead entitle Moody to summary judgment ruling in Moody's favor.  Discovery will allow Moody to determine the financial state of Plaintiff prior to the COVID-19 pandemic and Government Regulations, what effect the Government Regulations had on that financial state, and what Debtor did in response thereto.  Discovery will enable Moody to obtain the admission of Debtor that it operated continuously and never shut down from and after March 2020.  Indeed, despite the fact that the Government Regulations prohibited indoor dining in the Restaurant for a limited period of time, Plaintiff remained able to operate through delivery and take-out options.  Without discovery, Moody is without any information as to the percentage of Plaintiff's revenue that was generated from indoor dining versus take-out and delivery prior to the Government Regulations, and the amount

17

of revenue that was generated from each of the three means after the Government Regulations went into place.

33.     The information regarding Plaintiff's revenue and expense, and sources thereof, are important to Plaintiff's position that the Force Majeure Provision makes the abatement of rent appropriate.  Specifically, Plaintiff has not alleged sufficient facts to prove that the Force Majeure Provision is even implicated in this case.  Indeed, based upon the Lederman Declaration, it is clear that the Debtor was open and operating and using the Leased Premises as a restaurant, which was the intended purpose under the Lease.

34.     The discovery sought by Moody will elucidate the specific facts necessary to determine the applicability of the Force Majeure Provision.

   **D.     Moody did not have an opportunity to obtain discovery prior to the filing of the Motion for Summary Judgment.**

35.     Plaintiff filed its Summary Judgment Motion a mere seven days after the Complaint was filed.  The Debtor has refused to provide Moody information about operations. Thus, Moody did not have adequate time to serve, let alone receive, responses to meaningful discovery requests in that truncated time period; however, prior to the filing of this Motion, Moody served Plaintiff with its first set of interrogatories and requests for document production (the "Discovery Requests").

<u>**CONCLUSION**</u>

36.     As highlighted above, the Motion for Summary Judgment filed by Plaintiff raises many issues of material fact which require some investigation before they may support the relief requested here.  Notwithstanding implementation of the Government Regulations, Debtor was open and operating and had monthly revenues in excess of the monthly Lease obligations—yet chose to pay expenses other than to Moody.  Debtor also obtained a PPP loan to help pay

eligible expenses. Coupled with an interpretation of the Force Majeure Provision against Debtor, Debtor had quiet enjoyment of the Leased Premises continuously. The facts as presented to the Court support a finding that the Force Majeure Provision do NOT excuse the Debtor from performing its obligations under the Lease from and after implementation of the Government Regulations. Alternatively, the issues posited by Plaintiff raise material issues of disputed fact and Moody is entitled to discovery before the Court entertains Debtor's Motion.

37.     For the foregoing reasons, this Court should enter an Order denying Plaintiff's Motion for Partial Summary Judgment or, alternatively, setting a discovery schedule and continuing the Motion for Partial Summary Judgment until such discovery is completed, and granting such further relief as this Court deems just and proper.

Dated:      January 15, 2021
Wilmington, Delaware

Respectfully submitted,

HILLER LAW, LLC

*/s/ Adam Hiller*
Adam Hiller (DE No. 4105)
1500 North French Street
Wilmington, Delaware 19801
Phone: (302) 442-7677
Email: ahiller@adamhillerlaw.com

Beverly Weiss Manne, Esquire
Evan C. Pappas, Esquire
TUCKER ARENSBERG, P.C.
1500 One PPG Place
Pittsburgh, PA 15222
Phone: 412-594-5525
Email: bmanne@tuckerlaw.com
          epappas@tuckerlaw.com

*Counsel for Moody National Companies*

TADMS:5443525-1 026059-190343

19