IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| RTI HOLDING COMPANY, LLC,[1] | : | Case Nos. 20-12456-JTD, *et seq.* |
| | : | Jointly Administered |
| Debtor. | : | |
| | : | |
| RUBY TUESDAY, INC., | : | Adv. Pro. No. 20-51046-JTD |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| MOODY NATIONAL RUBY T, LLC, | : | Related to:  Doc. No. 4 |
| | : | |
| Defendant. | : | |
| | : | |

**ANSWERING BRIEF OF MOODY NATIONAL RUBY T, LLC IN OPPOSITION TO DEBTOR'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING FIRST CLAIM FOR RELIEF ASSERTED IN COMPLAINT FOR DECLARATORY RELIEF**

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's U.S. tax identification number are as follows: RTI Holding Company, LLC (4966); Ruby Tuesday, Inc. (5239); Ruby Tuesday, LLC (1391); RTBD, LLC (6505); RT of Carroll County, LLC (8836); RT Denver Franchise, L.P. (2621); RT Detroit Franchise, LLC (8738); RT Distributing, LLC (6096); RT Finance, LLC (7242); RT FL Gift Cards, Inc. (2189); RT Florida Equity, LLC (7159); RT Franchise Acquisition, LLC (1438); RT of Fruitland, Inc. (1103); RT Indianapolis Franchise, LLC (6016); RT Jonesboro Club (2726); RT KCMO Franchise, LLC (7020); RT Kentucky Restaurant Holdings, LLC (7435); RT Las Vegas Franchise, LLC (4969); RT Long Island Franchise, LLC (4072); RT of Maryland, LLC (7395); RT Michiana Franchise, LLC (8739); RT Michigan Franchise, LLC (8760); RT Minneapolis Franchise, LLC (2746); RT Minneapolis Holdings, LLC (7189); RT New England Franchise, LLC (4970); RT New Hampshire Restaurant Holdings, LLC (7438); RT New York Franchise, LLC (1154); RT Omaha Franchise, LLC (7442); RT Omaha Holdings, LLC (8647); RT One Percent Holdings, LLC (6689); RT One Percent Holdings II, LLC (2817); RT Orlando Franchise, LP (5105); RT Restaurant Services, LLC (7283); RT South Florida Franchise, LP (3535); RT Southwest Franchise, LLC (9715); RT St. Louis Franchise, LLC (6010); RT Tampa Franchise, LP (5290); RT Western Missouri Franchise, LLC (6082); RT West Palm Beach Franchise, LP (0359); RTTA, LP (0035); RTT Texas, Inc. (2461); RTTT, LLC (9194); Ruby Tuesday of Allegany County, Inc. (8011); Ruby Tuesday of Bryant, Inc. (6703); Ruby Tuesday of Columbia, Inc. (4091); Ruby Tuesday of Frederick, Inc. (4249); Ruby Tuesday of Linthicum, Inc. (8716); Ruby Tuesday of Marley Station, Inc. (1641); Ruby Tuesday of Pocomoke City, Inc. (0472); Ruby Tuesday of Russellville, Inc. (1601); and Ruby Tuesday of Salisbury, Inc. (5432). The Debtors' mailing address is 333 East Broadway Ave., Maryville, TN 37804.

# TABLE OF CONTENTS

**Page**

I.    STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING ............... 1

II.   INTRODUCTION AND SUMMARY OF ARGUMENT ........................................... 2

III.  BACKGROUND AND STATEMENT OF FACTS ..................................................... 4

IV.   ARGUMENT ............................................................................................................... 9

      A.    Debtor is Not Entitled to Relief Pursuant to Fed. R. Civ. P. 56. ................... 9

      B.    The Court Must Deny the Summary Judgment Motion Because the
          Facts Pleaded in Debtor's Complaint are Disputed and Inconclusive .......... 10

      C.    The Facts as Pleaded by Debtor are Insufficient for the Court to
          Enter Partial Summary Judgment in its Favor; Instead, the Court
          Must Deny the Same ...................................................................................... 11

      D.    This Court Must Construe the Force Majeure Provision in Favor
          of Moody ....................................................................................................... 13

      E.    The Cases Cited by Debtor are Distinguishable or Support Moody's
          Position That Rent Cannot be Abated ........................................................... 15

V.    CONCLUSION ........................................................................................................... 17

# TABLE OF AUTHORITIES

## CASES

*In re CEC Entm't, Inc.*,
Case No. 20-33163, *et al.*, 2020 WL 7356380 (Bankr. S.D. Tex. Dec. 14, 2020) ..................15

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) .......................................................................................................10

*Galligan v. Arovitch*,
219 A.2d 463 (Pa. 1966) ................................................................................................14

*Gulf Oil Corp. v. Federal Energy Regulatory Commission*,
706 F. 2d 444 (3rd Cir. 1983), *cert. denied*, 464 U.S. 1038, 104 S. Ct. 698,
79 L.Ed.2d 164 (1984) ...............................................................................................14, 15

*Hollinger v. Wagner Min. Equip. Co.*,
667 F.2d 402 (3d Cir. 1981) ...........................................................................................10

*In re Bread & Butter Concepts, LLC*,
Case No. 19-22400 (DLS) (Bankr. D. Kan. May 15, 2020) .......................................16

*In re Hitz Rest. Grp.*,
616 B.R. 374 (Bankr. N.D. Ill. 2020) ........................................................................16, 17

*In re Joshua Slocum, Ltd.*,
922 F.2d 1081 (3rd Cir. 1990) ........................................................................................5

*In re Ultimate Acquisition Partners LLP*,
Case No. 11-10245 (MFW), 2014 WL 12795558 (Bankr. D. Del. Jan. 31, 2014)..................10

*Martin v. Dep't of Envtl. Res.*,
548 A.2d 675 (Pa. Commw. Ct. 1988) .........................................................................14, 15

*In re Pier 1 Imports*,
615 B.R. 196 (Bankr. E.D. Va. 2020)..............................................................................16

*State Public School Building Authority v. Quandel*,
585 A.2d 1136 (Pa. Cmwlth. 1991) ...............................................................................13

*Sunseri v. Garcia & Maggini Co.*,
148 A. 81 (Pa. 1929)........................................................................................................3

*Sun Co. (R&M) v. Pennsylvania Tpk. Comm'n*,
708 A.2d 875 (Pa. Cmwlth. 1998) .................................................................................13

*United States Aviation Underwriters, Inc. v. WTAE Flying Club*,
    300 F.Supp. 341 (W.D. Pa. 1969) ............................................................................................ 14

**STATUTES**

11 U.S.C. § 365(d)(3) ............................................................................................................. 5, 7

**RULES**

Fed. R. Civ. P. 56 ................................................................................................................... 10
Fed. R. Bankr. P. 7056 .............................................................................................................. 1

**OTHER AUTHORITIES**

Restatement (Second) of Contracts § 206 .............................................................................. 13

## I. <u>STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING</u>

1.      Moody National Ruby T, LLC ("Moody" or "Landlord") files this Brief in support of its Objection to Plaintiff's Motion for Partial Summary Judgment Motion (the "Summary Judgment Motion").   On December 14, 2020, Plaintiff, Ruby Tuesday, Inc. (the "Debtor" or "Plaintiff"), one of the debtors and debtors in possession (the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), filed a Complaint for Declaratory Relief at A.P. No. 20-51046-JTD, seeking a declaratory judgment that the *force majeure* provision contained in paragraph 33 of the Lease (the "Force Majeure Provision") has been triggered and, as such, Plaintiff is entitled as a matter of law to abate its rent obligations to Moody ***through the remainder of the worldwide COVID-19 pandemic*** (the "Complaint"). [Doc. 1.][2]  Seven days after the Complaint was filed, on December 21, 2020, Debtor filed the *Debtor's Motion for Partial Summary Judgment Regarding First Cause of Action Asserted in Complaint for Declaratory Relief* (the "Summary Judgment Motion"), [Doc. 4], and Brief in Support ("Debtor's Brief").  [Doc. 5].

2.      Because there has been no discovery allowed with respect to the abatement proceeding, and Moody has been unable to discover facts necessary to refute the Summary Judgment Motion, Moody has filed a Rule 56(d)[3] motion seeking a continuance or denial of the Summary Judgment Motion.  Moody now files this Objection to the Summary Judgment Motion.

3.      For the reasons set forth herein and in its 56(d) Motion, Moody respectfully submits that there are disputed material issues of fact that preclude the entry of partial summary judgment in favor of the Debtor, and that the Court should deny the Summary Judgment Motion.

---

[2] All references to document numbers throughout this Objection reference the pleadings filed in Adv. No. 20-41046-JTD unless otherwise stated.
[3] Rule 56(d) of the Federal Rules of Civil Procedure is made applicable to this adversary proceeding pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure.

## II. <u>INTRODUCTION AND SUMMARY OF ARGUMENT</u>

4.      Plaintiff Ruby Tuesday Inc. is in default of its obligations under Plaintiff's Lease with Moody (as defined below) by virtue of Plaintiff's failure to, *inter alia*, pay rent, parking lot charges and real estate taxes since March 2020, and failure to defend and/or indemnify Moody from a personal injury lawsuit arising out of Plaintiff's conduct and/or use of the Premises (as defined below).

5.      Despite its vague suggestions to the contrary, Plaintiff has continued to operate its restaurant throughout the COVID-19 pandemic and despite various government regulations that were implemented to address the same (the "Government Regulations").  Neither the COVID-19 virus nor the Government Regulations caused Plaintiff to close its restaurant and Plaintiff has had quiet enjoyment of the premises since the pandemic began in March 2020.   Nonetheless, during this same timeframe, Plaintiff has defaulted in nearly ALL of its obligations under the Lease.  This includes failure to pay most of its 2020 pre-petition or post-petition rent (including base rent, taxes, and common area maintenance ("CAM") charges), failure to  provide evidence of insurance, and failure to defend a personal injury lawsuit and/or indemnify Moody's for its defense of the lawsuit that was filed against Debtor in which Moody has been joined as a defendant solely because it owns the Leased Premises.

6.      There are material disputed facts that the Court needs to address. They preclude entry of partial summary judgment for Plaintiff.

7.      The Lease, drafted by Debtor in 1998, contains a Force Majeure Provision. However, there is a material dispute about how that provision is to be interpreted and whether Debtor is entitled to "abate" rent for an unspecified and indefinite period of time, because the language in the *force majeure* provision states that it only applies when a party is "prevented

from" performing the terms, covenants and conditions of the Lease provisions due to cause or causes outside of Debtor's control. *See* Lease, ¶ 33. While the Government Regulations and pandemic were outside the Debtor's control, they did not prevent Debtor from complying with its obligations under the Lease.

8.      Accordingly, the applicability of the Force Majeure Provision is in dispute because the Debtor has remained open for business at all times, enjoyed quiet enjoyment of the Premises at all times, and has had sufficient EBITDA from operations and access to PPP loan proceeds which it could have used to pay its rent, CAM and taxes.

9.      While the Government Regulations that were put into place in response to the COVID-19 pandemic impacted everyday life for many, in this instance there are significant disputed factual issues about whether it was the Government Regulations that prevented the Debtor from complying with its Lease obligations.

10.     Debtor's Summary Judgment Motion oversimplifies and obfuscates the facts at issue in this case, providing no or insufficient factual support to show that the COVID-19 pandemic and resulting Government Regulations caused Plaintiff to be unable to comply with its Lease obligations.[4]

11.     *Force majeure* provisions are strictly construed. Because Debtor drafted the Lease, the Lease and its provisions must be construed against Debtor. Moreover, under Pennsylvania law the *force majeure* event must make the performance **impossible**. *Sunseri v. Garcia & Maggini Co.,* 148 A. 81, 83 (Pa. 1929) (emphasis added). In *Sunseri*, the defendant suffered a crop failure and was unable to perform its contract and deliver the required amount of garlic. While the *force majeure* clause specifically included crop failure, the Pennsylvania

---

[4] Debtor has refused to provide information to Moody on an "informal discovery basis" pertaining to the operations and financial performance of the restaurant at the Leased Premises even though the Court suggested the Debtor should do that.

Supreme Court found that crop failure meant total failure, not partial failure.  Performance was not impossible, as the party could have obtained the garlic at a higher price, and therefore the defendant could not use the force majeure clause to excuse nonperformance. *Id*., at 82.

12.      Similarly, here, performance was not impossible.  Debtor's Restaurant was and is open and generating revenue.  Through at least June 2, 2020, Debtor had a "manager operating profit" of over $465,000 and cumulative EBITDAR (earnings before interest, taxes, depreciation and amortization and rent but after payment for marketing) of close to $400,000.  In that period, Debtor's total occupancy cost for the period was approximately $300,000.  Because Debtor did not pay rent for the months of March through June, the occupancy cost for the period was actually closer to $200,000—meaning that Debtor had positive EBIDTA of almost $200,000.  Accordingly, the Government Regulations did not make it impossible for Debtor to pay rent and comply with its Lease.  Debtor intentionally chose to not pay rent even though it had more than sufficient earnings as of June 2, 2020.  *See* Exhibit 2 to the Declaration of Mary Smith, Debtor's Financial Statement as of June 2, 2020.  In addition, from and after June 2020, the Debtor was able to offer in-dining room dining so its revenues would have increased. Furthermore, Debtor's Complaint, Motion and Declaration in support do not disclose how much revenues increased once dining room was permitted.

13.      Because the nature, scope, and applicability of the force majeure provision is in dispute and there are material issues of fact relative thereto, Debtor is NOT entitled to even the partial summary judgment it seeks in the Motion for Summary Judgment.

### III. BACKGROUND AND STATEMENT OF FACTS

14.      On October 7, 2020 (the "Petition Date"), Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code") with the United States Bankruptcy Court for the District of Delaware (the

"Bankruptcy Court"), which cases are jointly administered under Case No. 20-12456 (the "Bankruptcy Case").

15.     As stated by the Debtor in its Complaint, the Debtors develop, operate, and franchise casual dining restaurants in the United States, Guam, and five foreign countries under the Ruby Tuesday® brand.  Complaint, ¶ 9.

16.     Plaintiff is the tenant under a Certain Ground Lease Agreement effective June 24, 1998 (as amended, the "Lease") with Landlord Moody National Ruby T, LLC, as successor-in-interest to McBlynn Lodging PM, Inc., for the commercial building owned by Landlord at 2053 Chemical Road, Plymouth Meeting, Pennsylvania 19462 (the "Premises").   Complaint, ¶ 1.

17.     *The Lease was drafted by Ruby Tuesday Inc.*

18.     A review of the Lease shows that Ruby Tuesday was building the building which would house its restaurant and the Restaurant location was right next to a hotel, a Hampton Inn, and part of a shopping center location.  A copy of the Lease is attached to Debtor's Complaint and Summary Judgment Motion.

19.     The Lease constitutes a lease of nonresidential real property in a shopping center as that term is used in § 365(b)(3) of the Bankruptcy Code.  *See In re Joshua Slocum, Ltd.*, 922 F.2d 1081, 1086–87 (3rd Cir. 1990).

20.     Pursuant to the Lease, Plaintiff is obligated, *inter alia,* to pay the following amounts to Landlord:

> a.     **Rent:**  Minimum annual rent shall be paid in equal monthly installments of Sixteen Thousand and Eighteen and 08/100ths Dollars ($16,018.08) per month and due in advance.  Lease, ¶ 4.B.

> b.     **CAM Charges in Monthly Installments:**  *See* Lease, ¶ 1.B.iv.

      c.     **Taxes and Governmental Assessments (together, the "Taxes"):**  *See* Lease, ¶ 5.B.

21.    Debtor is in default of the Lease for failing to pay Rent, CAM Charges and Taxes for the period from March 2020 through December 31, 2020.  Debtor paid its January 2021 Rent in January 2021, but has not paid CAM Charges and Taxes for January 2021.

22.    The Lease also requires Plaintiff to "indemnify [Moody] against and save it harmless from and against any and all claims, actions, damages, liability and expense in connection with loss of life, personal injury and/or damage to property arising from or out of the Leased Premises . . . ."  *See* Lease, ¶ 17.D.

23.    Plaintiff is currently co-defendant, with Moody, in a state court action pending in the Court of Common Pleas of Philadelphia County (the "Galinski Action").

24.    Debtor is in default of this provision and has not even filed a suggestion of bankruptcy in the Galinski Action.  Even if it did, the Debtor's automatic stay arguably does not apply to claims against Moody.

25.    Pursuant to the Lease, the failure of Plaintiff to pay any installment of rent or additional rent is a default.  *See* Lease, ¶ 15.

26.    Prior to the Petition Date, Plaintiff was notified of the default on June 4, 2020 (the "Default").

27.    In the summer of 2020 the Debtor asked Moody to defer rent for a period due to a decrease in its revenues.  Moody and Debtor agreed that Moody would forbear from enforcing the defaults, Debtor would commence paying rent in August 2020 and the defaults would be cured during 2021 and 2022.

28.     However, Debtor did not and/or would not execute the agreement that contained those simple forbearance terms.  This email exchange between Debtor and Moody is attached as Exhibit 1 to the Declaration of Mary Smith which is attached hereto.

29.     On September 28, 2020, due to Plaintiff's failure to pay rent charges and late fees totaling $101,663.90 (as of September 28, 2020), Moody notified Plaintiff that Moody was exercising its rights under Section 15 of the Lease to terminate the Lease ("Notice of Termination") with an effective termination date of October 9, 2020.

30.     Between the date of the Notice of Termination and the effective date of termination, Plaintiff filed the Bankruptcy Case.

31.     As of the Petition Date, Plaintiff was obligated to Moody under the Lease for unliquidated indemnification obligations related to the Galinski Action and $187,191.72 in unpaid Rent, CAM Charges and Taxes.

32.     Plaintiff's restaurant located on the Premises has remained open and operational during the worldwide COVID-19 pandemic and the resulting government-ordered operational restrictions.

33.     Initially, Plaintiff was open and operating for delivery and/or take out, and is currently open and operating for delivery, take out and in-dining-room dining.

34.     Early in the Case, the Court authorized the Debtors to defer making rent payments through the end of November 2020.

35.     The 60-day deferral period ended on December 6, 2020.  Although the deferral period expired, Plaintiff has not paid the post-petition rent payments for accrued post-petition rent or common area charges or parking charges as required pursuant to 11 U.S.C. § 365(d)(3).

Accordingly, Moody has also filed its Motion to Compel the Debtors to comply with the Bankruptcy Code and pay its post-petition rent.

36.     Plaintiff's Complaint seeks to abate both pre-petition and post-petition rent obligations under the Lease due to the Government Regulations that were put in place due to the COVID-19 worldwide pandemic, from the date that the Government Regulations went into effect through the date on which they are ultimately lifted[5].

37.     Plaintiff Summary Judgment Motion must be denied because it has averred insufficient facts, and there are many material and disputed facts, to show Plaintiff is entitled to Summary Judgment.

38.     The Motion does show that the Restaurant at the Premises has been continuously open for business and operating in some fashion notwithstanding (and without violating) the Government Regulations.

39.     The Government Regulations attached as an Exhibit to the Summary Judgment Motion never shut down the restaurant at the Premises, but instead allowed the Restaurant to initially operate through take-out and delivery of both food and alcoholic beverages (*i.e.*, "to-go" sales) as well as outdoor dining.

40.     Debtor already had a take-out and delivery business before the Government Regulations went into effect.

41.     Even though other Ruby Tuesday restaurants had tables and chairs set up for outside dining— allowed under Governor Wolf's yellow phase of reopening— it does not appear that Debtor chose to make similar efforts at the restaurant at the Leased Premises.

42.     Still, Debtor was open and operating the restaurant continuously.

---

[5] It is unclear what the Plaintiff means by this open-ended request.

43.     Debtor obviously had sufficient revenues to pay various operating expenses of the Restaurant and as of June 2, 2020, Debtor had a positive EBITDAR of $398,000.

44.     Debtor also had sufficient EBITDA on a cumulative basis in the period encompassing March 2020 and afterward, so Debtor could have paid, but chose not to pay, its rent obligations.

45.     Debtor's financial information as of June 2, 2020 reflected that notwithstanding the Government Regulations and reduced revenue, the Restaurant continued to have a six-figure EBITDAR during that time.[6] *See* Exhibit 2  to the Declaration of Mary Smith which is attached hereto.

46.     Moreover, even though Debtor's revenue was reduced, Debtor's expenses were correspondingly reduced.  *See id.*

47.     Because of COVID-19 and the Government Regulations, the Debtors obtained a ten million-dollar PPP loan.  Eligible expenses for PPP loan forgiveness include rent.  Between a positive EBITDAR and loan proceeds it was likely more than possible for Debtor to cover its rent obligations from March 2020 through December 2020.

48.     Debtor's averment that revenue was reduced dramatically "initially" may be technically accurate but misleading as Debtor had corresponding decreases in expenses.

## IV. ARGUMENT

**A.     Debtor is Not Entitled to Relief Pursuant to Fed. R. Civ. P. 56.**

---

[6] Earnings before Interest Depreciation Amortization and Rent ("EBITDAR") for the period ending May 5, 2020 was $398,090.  EBITDA – with adding back in the unpaid rent for March, April and May 2020 – was over $170,000. See Financial Statement for Period Ending May 5, 2020 attached as Exhibit "2" to the Declaration of Mary Smith.

49.     Moody has filed a Motion pursuant to Rule 56(d) seeking to have the Court deny the Summary Judgment Motion or continue it.  Moody incorporates that Rule 56(d) Motion, and the Brief in support thereof, herein.

**B.      The Court Must Deny the Summary Judgment Motion Because the Facts Pleaded in Debtor's Complaint are Disputed and Inconclusive.**

50.     The Third Circuit has long recognized "summary judgment is a drastic remedy" and has made clear "that courts are to resolve any doubts as to the existence of genuine issues of fact against the moving parties.  *Hollinger v. Wagner Min. Equip. Co.*, 667 F.2d 402, 405 (3d Cir. 1981).

51.     The movant bears the burden of establishing that no genuine issue of material fact exists.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *In re Ultimate Acquisition Partners LLP*, No. 11-10245 (MFW), 2014 WL 12795558, at *2 (Bankr. D. Del. Jan. 31, 2014).  A fact is material when it could "affect the outcome of the suit." *Id.*

52.     In viewing the motion for partial summary judgment most positively in Moody's favor it is clear that material disputed facts exist since Debtor has continued to operate its Restaurant from and after March 2020 and had positive EBITDA at least through June 2, 2020 when its operations were most impacted by the Government Regulations.

53.     The averments asserted by Plaintiff in both the Complaint and Motion for Summary Judgment are vague and devoid of information vital to Moody's ability to defend the Motion for Summary Judgment.

54.     For instance, Debtor states that "initially" its sales were reduced by 75%, but it does not state whether initially was for one day, one week or one month. Moreover, the averment is misleading, as Debtor's financial statement shows Debtor's operating costs were correspondingly reduced.

55.     Debtor states that when the Government Regulations went into effect take-out was only 10% of its business.  But, again, that averment is deficient in providing facts to enable the Court to grant summary judgment.

**C.     The Facts as Pleaded by Debtor are Insufficient for the Court to Enter Partial Summary Judgment in its Favor; Instead, the Court Must Deny the Same.**

56.     The application of the Lease's Force Majeure Provision requires a determination of issues of fact concerning whether the COVID-19 pandemic and Government Regulations prevented the Debtor from complying with its rent obligations under the Lease.

57.     Simply put, Debtor has plead that the Lease contains the Force Majeure Provision, there is a pandemic and Government Regulations, and initially when that occurred Debtor has had cash flow and revenue reductions.   However, that is NOT enough, as the words in the Force Majeure Provision must be given their unambiguous meanings, and any ambiguities must be interpreted against the Debtor—both because force majeure provisions are strictly construed and because the Lease should be construed against its drafter.

58.     The facts outlined above, coupled with an interpretation of the Force Majeure Provision against Debtor, support a finding that the Force Majeure Provision does not excuse the Debtor from performing its obligations under the Lease from and after implementation of the Government Regulations because those Regulations were not what prevented Debtor from complying with its Lease obligations.

59.     Debtor's own pleadings admit that Debtor's Restaurant was open and operating and, therefore, generating income at all times notwithstanding the Government Regulations.

60.     The facts averred by Chief Executive Officer of Ruby Tuesday, Inc. Shawn Lederman in his Declaration in support of Debtor's Motion for Partial Summary Judgment (the

"Declaration"), [Doc. 6], are insufficient for this Court to enter a summary judgment ruling in Debtor's favor as the carefully selected facts posited by the Debtor are insufficient in of themselves to allow this Court to enter partial summary judgment as sought by Debtor as it is clear that there are additional disputed material issues of act remaining at issue.

61.     Debtor's averred facts in the Summary Judgment Motion and Declaration consist of half-truths that are rebuttable, materially inadequate and misleading.

62.     For example, Debtor avers that "The Restaurant's revenues were significantly impacted by the Governmental Regulations, as the Debtor's business model is nearly fully based on in-house dining, with the historical run rate on delivery and take-out for the Restaurant accounting for less than 10% of total revenue." Declaration, ¶ 3.  However, this fact only reflects that Debtor's historical operation was based upon in-restaurant dining.  This is also an admission that notwithstanding the Government Regulations, the Debtor was operating, had revenues and was not shut down. Also the fact that the Debtor's modeling was impacted is not a "force majeure" event.

63.     Similarly Debtor's second stated fact is that the "the dining room closure of the Restaurant was devastating to the Debtor's business, with an initial revenue loss exceeding 75%." Declaration, ¶ 3.  However, as noted above, this fact does not provide information other than to state that initially-the Debtor had a revenue loss.  Was it gross revenue, net revenue? What period of time is encompassed by "initially"?  The first day? The first week?  It does not provide information about whether the corresponding decline in expenses.  It also does not say the lack of revenue made it impossible for Debtor to operate.  Indeed, revenues were sufficient to enable to Debtor to stay in business, and operate as a restaurant.

64.     Debtor also states that "to address the changes wrought by the Government Regulations and to comply with such Government Regulations, the Debtor streamlined its menu with an eye towards reducing inventory, operational complexity and labor."  Declaration, ¶ 4. This admission shows that the cash flow was within Debtor's control and that Debtor has changed its business model.  When these changes were made, which were solely within Debtor's control, and whether they were successful in increasing revenue, is not disclosed.

65.     Debtor states that no bar service at the Restaurant was allowed.  Declaration, ¶ 4. However, Debtor was able to offer customers take-out drinks as part of its ongoing business operation.  How many more drinks did customers order for take-out from and after March 2020? Further, once the dining room reopened, Debtor was able to serve alcohol at the tables.

66.     In support of its *force majeure* argument Debtor points out that the "Restaurant is *still* not permitted to offer a self-service Garden Bar and the operations of the Restaurant remain limited and subject to the Government Regulations."  Declaration, ¶ 4.  This neither provides any evidence that the Debtor is unable to operate, nor the extent to which Debtor has increased its business due to the changed business model.  Additionally, these restrictions—at this point, and indeed by mid-summer 2020—are not and were not unforeseeable.

67.     None of the foregoing facts alone or together, when viewed in a light most favorable to Moody, lead to the conclusion that the Debtor is entitled to invoke the Force Majeure Provision.

**C.     This Court Must Construe the Force Majeure Provision in Favor of Moody.**

68.     The Lease was drafted by Debtor and the provisions thereof must be construed against the Debtor. Under the rule of contra proferentem, ambiguities in a contract are construed against the drafter and in favor of the other party.   RESTATEMENT (SECOND) OF

CONTRACTS § 206. *State Public School Building Authority v. Quandel*, 585 A.2d 1136 (1991); *Sun Co. (R&M) v. Pennsylvania Tpk. Comm'n*, 708 A.2d 875, 878–79 (Pa. Cmwlth. 1998).

69.     Moreover, it is fundamental that ambiguous language in a lease is to be interpreted most strongly against the party who selected the language. *United States Aviation Underwriters, Inc. v. WTAE Flying Club*, 300 F. Supp. 341 (W.D. Pa. 1969).

70.     Where, as here, the lease was prepared by the lessee, the applicable rule of construction is that the lease be construed against the lessee. *Galligan v. Arovitch*, 421 Pa. 301, 219 A.2d 463 (1966).

71.     The Debtor urges the Court to interpret the Force Majeure Provision in a way that would permanently excuse the Debtor, in full or in part, from paying rent because the Government Regulations went into effect and Debtor had a reduction in revenues.  However, the Force Majeure Provision provides that it applies where Debtor is *prevented* from performing.  It was not the Government Regulations that prevented Debtor from paying its rent—it was Debtor's choice to not pay the rent.

72.     Further, Moody offered the Debtor a forbearance which would have deferred rent into 2021.  The Debtor instead demanded Lease modifications, such as an extended term, which went beyond assisting the Debtor in managing its reduced cash flow caused by the Government Regulations.

73.     While the pandemic was not Debtor's "fault," it is certainly Debtor's "fault" that the rent was not deferred to a time where the Debtor should have adapted its business model to the Government Regulations.  Even if the incident that caused the failure to perform falls within the categories of events that are included in the force majeure clause, the event "must have been

beyond the party's control and not due to any fault or negligence by the non-performing party" and must not have been "foreseeable." *Martin v. Dep't of Envt'l Res.*, 548 A.2d 675, 678 (Pa. Cmwlth. 1988); *Gulf Oil Corp. v. Federal Energy Regulatory Commission*, 706 F.2d 444, 452 (3rd Cir. 1983), *cert. denied*, 464 U.S. 1038, 104 S. Ct. 698, 79 L.Ed.2d 164 (1984) (in order to use a *force majeure* clause as an excuse for non-performance, the event alleged as an excuse must have been beyond the party's control and not due to any fault or negligence by the non-performing party).

74.     Furthermore, the party asserting *force majeure* must be able to show what actions it took to attempt performance. *Martin*, at 678; *Gulf Oil Corp*, *supra* (reversing order excusing nonperformance where defendant failed to demonstrate how it tried to prevent and/or mitigate the event's occurrence and its effects).

75.     The Complaint, Summary Judgment Motion, and Declaration are devoid of any showing that the Debtor took any action to attempt performance.

76.     Finally, while the March 2020 Government Regulations were not foreseeable, all of the regulations issued thereafter certainly were. Thus, to the extent the Force Majeure Provision applies, it only would apply to the original Government Regulations issued in March 2020, and with respect to the March and April rent, and even then, only to the extent they "prevented" Debtor from paying rent, which Moody submits was not the case.

**D.     The Cases Cited by Debtor Are Distinguishable or Support Moody's Position That Rent Cannot be Abated.**

77.     Debtor cites a number of cases for the proposition that this Court should find the force majeure provision in the Lease compels abatement of the rent due thereunder.

78.     In the *CEC Ent't, Inc.* case, the debtor operated a Chuck E. Cheese which was both an *entertainment and dining venue*. The inability to operate the entertainment portion of the

business was the key to triggering the force majeure in that case, to the extent it was triggered at all. *In re CEC Entm't, Inc.*, Case No. 20-33163, *et al.*, 2020 WL 7356380 (Bankr. S.D. Tex. Dec. 14, 2020). Here, the restaurant is a restaurant and it is and has been operating. Moreover, Debtor's arguments that *force majeure* could be invoked were rejected by the court in *CEC Ent't*, and the court found that the Bankruptcy Code does not permit the court to equitably alter the landlords' rights to rent.

79.    The Debtor also cites the Bankruptcy Court for the District of Kansas' *Order Granting in Part Debtors' Emergency Motion for Entry of an Order: (I) Approving Relief Related to the Interim Budget; (II) Temporarily Adjourning Certain Motions and Applications for Payments; (III) Extending the Deadline to Assume or Reject Nonresidential Real Property Leases; and (IV) Granting Related Relief* issued in the matter of *In re Bread & Butter Concepts, LLC*, Case No. 19-22400 (DLS), (Bankr. D. Kan. May 15, 2020), at Doc. 219. There, the court *deferred* rent payments—it did not reduce or otherwise abate them. In the case at bar, Debtor declined to take a rent deferral, and now—after 10 months of paying not a dime of rent—demands that the Court allow the Debtor to abate rent.

80.    Similarly, in *In re Pier 1 Imports,* 615 B.R. 196 (Bankr. E.D. Va. 2020), the court also did not find that the Debtors do not have to pay rent. Instead, as in *Bread & Butter Concepts*, the court ordered that rent would accrue and be *deferred* through May 31, 2020.

81.    Finally, in *In re Hitz Rest. Grp.*, 616 B.R. 374 (Bankr. N.D. Ill. 2020), the debtor raised *force majeure* with respect to rent due for three months in connection with a relief from stay motion. Notably, the *Hitz* court found that March rent was due because the applicable government orders went into effect after the due for the rent. Moreover, the court, which "had not yet conducted an evidentiary hearing to determine the final amount of rent due under the

lease during the pendency of Governor Pritzker's executive order . . . preliminarily interprets Debtor's estimation as an admission that it owes at least 25 percent of the rental payments for April, May, and June 2020.  Monthly rental payments due thereafter are likely to increase as the government's shut-down restrictions are gradually lifted."  *Id.* at 379.

82.    It should be noted however, that here the Force Majeure Provision does not speak to a prevention of the Debtor from "operating normally".  It expressly provides that the condition must prevent the Debtor from performing its obligations.  Simply stated, the Government Regulations did not ***prevent*** the Debtor from performing its obligations, as the Debtor was open for business and had adequate year-to-date earnings to cover the rental obligations arising after the Government Regulations were put into effect.

## V.  CONCLUSION

The Court must deny Debtor's Summary Judgment Motion and grant Moody such other and further relief as is just and proper.

Dated:      January 15, 2021  
Wilmington, Delaware

Respectfully submitted,

HILLER LAW, LLC

***/s/ Adam Hiller***
Adam Hiller (DE No. 4105)  
1500 North French Street  
Wilmington, Delaware 19801  
Phone:  (302) 442-7677  
Email:  ahiller@adamhillerlaw.com

Beverly Weiss Manne, Esquire  
Evan C. Pappas, Esquire  
TUCKER ARENSBERG, P.C.  
1500 One PPG Place  
Pittsburgh, PA 15222  
Phone:  412-594-5525  
Email:  bmanne@tuckerlaw.com  
            epappas@tuckerlaw.com

*Counsel for Moody National Ruby T, LLC.*